### JOHN LAUER v. GEORGE LIVINGS.

1. BILL OF EXCEPTIONS; *Irregularity; Sufficient Record.* It is irregular to incorporate into a bill of exceptions the pleadings, journal entries, or other matters which of themselves are a part of the record; but where they are so incorporated, and the certificate of the clerk to the bill of exceptions is not merely that it is a copy of the original bill of exceptions, but also that the pleadings, journal entries, etc., therein contained are true, full and correct copies of the original pleadings, journal entries, etc., as they appear on file or of record in his office, *held,* that notwithstanding the irregularity, the record is sufficiently transferred to this court to call for inquiry into the errors alleged upon the record.

2. LIEN UPON CHATTELS; *Right of Possession.* A lien upon chattels gives the right of possession, and such right of possession is not destroyed by a tender of the amount of the lien after suit is brought and costs accrued, without a tender also of such costs. ( *Smith v. Woodleaf,* 21 Kas. 717.)

3. NIGHT HERD LAW, *Not Repealed.* The night herd law of 1868 is not repealed, either in terms or by implication, by the general herd law of 1872.

4. ———— *Valid Order of Commissioners.* Under the night herd law, an order of the commissioners requiring animals to be confined in the nighttime during the *entire year* is, if proper prior proceedings are had, within the statute, and valid.

### *Error from Brown District Court.*

REPLEVIN, brought by *Livings* against *Lauer,* for the possession of a horse. Trial at the September Term, 1879, of the district court, and judgment for plaintiff. The defendant brings the case to this court. The facts, pleadings and proceedings are fully stated in the opinion.

*Killey & May,* for plaintiff in error.

*Jas. Falloon,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action in replevin, brought in a justice's court by Livings against Lauer, for the possession of a horse. Lauer answered, setting up in defense that he took

up said horse on his inclosed premises in the night-time, in Powhattan township, Brown county, Kansas, while trespassing on his growing crops, under the provisions of the night herd law, (Gen. Stat., ch. 105, art. 1,) and that the night herd law was legally in force in said Powhattan township at said time, and claimed a lien upon said horse for his damages. Judgment for Livings, from which Lauer appealed to the district court, where a trial was had before a jury. No new pleadings were filed. After the testimony was all in, the court, on its own motion, found as a matter of law, from the evidence, that the night herd law was legally in force in said Powhattan township at the time said horse was taken up by Lauer, that the same was trespassing upon Lauer's premises in the night-time of August 17, 1879, and was taken up by him upon his premises in said Powhattan township, Brown county, Kansas, while so trespassing on the same in the night-time of August 17, 1879, and that Lauer had a lien upon said horse by virtue of the night herd law for his damages done by said horse while so trespassing upon Lauer's premises. The court then announced that it would send no issue in the case to the jury, except the question as to the amount of Lauer's said damages, which the court then (plaintiff and defendant consenting as to the amount) found from the evidence to be the sum of $1.50. The court was then about to direct the jury to find a verdict for Lauer, finding the right of possession of said horse to have been in Lauer at the commencement of said action, and finding the amount of his recovery for his damages by reason of the trespass of said horse on his premises in violation of the night herd law to be the sum of $1.50, and that he had a lien upon said horse until the same was paid, when Livings filed his motion as follows (title omitted):

"Now comes the said plaintiff, and brings here into open court $1.50 as the amount of damages, which the court finds, without exception by either party as to the amount, the full damages done to defendant's corn by plaintiff's horse, and

moves, at the close of the evidence, judgment and verdict in favor of plaintiff for the said horse, and for costs of suit.

"By JAS. FALLOON, *Att'y for Pl'ff.*"

Lauer also at the same time filed his motion as follows ( title omitted ):

"Now comes the said defendant, and moves the court to direct the jury to find a verdict in favor of the defendant, finding the right of possession of the horse in dispute at the commencement of this action to have been in the defendant, and that his damages for the trespass done by said horse to the defendant's corn was the sum of $1.50.

"KILLEY & MAY, *Att'ys for Def't.*"

The court sustained Livings's motion, and overruled that of Lauer; whereupon the jury, under the direction and instructions of the court, returned the following verdict ( title omitted ):

"We, the jury impanneled and sworn to try the above cause, do on our oaths find the right of property and the right of possession thereof at the commencement of this suit to be in the plaintiff, and assess the amount of his recovery by reason of the unlawful detention thereof at the sum of $ —.

"JOHN SHERRETT, *Foreman.*"

Lauer then filed his several motions: For a new trial, for a judgment in his favor *non obstante veredicto*, and to retax the costs and tax all the costs against Livings—all of which the court overruled, Lauer duly excepting. Thereupon the court rendered judgment in favor of Livings for the costs in the action. From this judgment, Lauer brings error to this court.

The first question in this case is, as to the sufficiency of the record. This is a bill of exceptions, which contains not merely the testimony, and those matters not of themselves part of the record, but also the pleadings, orders, and, indeed, the entire proceedings in the case. That this is irregular, is clear. As has been often said, the functions of a bill of exceptions are simply to bring upon the record those matters not otherwise belonging to it. It is not like a case-made. It is improper to incorporate into it the pleadings, journal entries, etc. Upon authority of *Whitney v. Harris*, 21 Kas.

96, it is urged that the judgment must be affirmed, because this bill of exceptions does not of itself present enough of the case for any inquiry into the alleged errors.   If the certificate of the clerk were here, as in that case, simply that this is a copy of the bill of exceptions, that decision would be decisive of the question.   But the clerk's certificate, besides stating that this is a copy of the bill of exceptions, goes on to state that it contains full, true and correct copies of the pleadings, orders, etc., as the same appear respectively on file or of record in his office.   In other words, he does not simply certify that the proceedings, orders, etc., are correct copies from those in the original bill of exceptions, but also that they are correct copies of the original papers and records. In this respect, his certificate is as full and perfect as the ordinary certificate to a record of the case.   The argument in *Whitney v. Harris,* supra, was that the certificate only showed that the papers were copies of copies; here it shows that they are correct copies of the originals.   Substantially, then, the whole record is fully and correctly authenticated, and while it is irregularly prepared, yet the irregularity is not such as avoids the force of the authentication.   Hence we conclude that the challenge of the record must be overruled.

The case of *Smith v. Woodleaf,* 21 Kas. 719, is conclusive that the ruling of the court upon the effect of the tender was erroneous.   The defendant by his lien had the right of possession, and a tender of the amount of this lien would not of itself destroy the right of possession.   The tender should have included the costs.   A party who rightfully asserts his lien cannot, after costs have accrued, be mulcted in those costs by a mere discharge of the lien.

To obviate the force of this, it is contended that the night herd law is no longer in force, and that even if it be, the order of the commissioners in this case was void, and therefore that there was, in fact, no lien.   It is not pretended that this law has been in terms repealed, and it was declared valid and constitutional in the case of *Noffzigger v. McAllister,* 12 Kas. 315; but the contention is that it was repealed by

implication by the subsequent general herd law, a law adjudged valid in the case of *Keyes v. Snyder*, 15 Kas. 145. We do not think this the effect of the subsequent law. Repeals by implication are not favored. If both statutes can have force, both remain. Now there is room for the operation of both statutes, and there is no inconsistency between them. The former authorizes the commissioners to prohibit the running at large of certain animals in the night-time in such townships as suitably petition for the order; the latter to prohibit the running at large at all times in the entire county. The former gives power to the commissioners only upon the proper petition from the township; the latter gives both the power and election to the commissioners. The former operates only upon a particular township, and in the night-time. The latter must control the entire county, and be operative both in the day and night. The former may be in force but a part of the year; the latter must be in force all the time. Obviously there is room for the operation of both statutes, and therefore the former is not repealed by the latter. One statute may be in force in one county, and the other in another. It is also objected that the order of the commissioners is void, as in excess of their powers. The statute provides that upon petition, the commissioners shall order that certain animals be "confined in the night-time for *certain portions of the year,* to be specified in the petition." The petition and order named the entire year, and for twenty-five years. The question is, does the authority to prohibit for any specified portion of a year, give authority to prohibit for the entire year? This question must be answered in the affirmative. Power to make an order operative at any time, is power to make one operative at all times. The petitioners may name any portion of the year, and they may therefore name the entire year. The length of time during which the order shall be operative is a matter of their choice, and if they desire that it be operative all the time, there is no power in the courts to abridge their choice.

There being no other question in the case, the judgment of

the district court will be reversed, and the case remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.