## THE STATE OF KANSAS v. C. W. MYERS.

1. APPEAL — *Record* — *Certificate of Trial Judge.* Where a record is filed in this court consisting of two volumes, marked "one" and "two," purporting to contain the bill of exceptions in the case certified to and authenticated by the trial judge, who states that the bill of exceptions is contained "in two volumes, numbered one and two," in the absence of any proof to the contrary, such volumes will be considered as containing the bill of exceptions so referred to.

2. CASE, *Followed.* The case of *Lauer v. Livings,* 24 Kas. 275, followed.

3. PRELIMINARY EXAMINATION — *Waiver, not to be Revoked.* Where the complaint and warrant in a criminal case state in general language the offense charged against the defendant, and such defendant waives a preliminary examination thereon, he cannot be heard, after an information has been filed setting forth fully and specifically the offense attempted to be charged in the warrant, to say that he has had no preliminary examination.

4. INSOLVENT BANK, *Accepting Deposits — Information.* An information under the provisions of §16, chapter 43, Laws of 1891, charging an officer of a bank with knowingly accepting deposits when his bank is insolvent, need not allege that loss occured to anyone by reason of such deposit.

5. BANK OFFICER — *Prosecution — Opinion — Evidence — Error.* In the prosecution of an officer of a bank for knowingly violating the provisions of §16, chapter 43, Laws of 1891, it is error to permit a witness upon the trial to give his opinion as to the solvency or insolvency of the bank at the time of the alleged deposit. The actual facts concerning the condition of the bank at the time of the deposit may be proved, but opinion evidence thereof is not admissible.

6. DEPOSITS — *Mode of Payment.* The law of the state does not require a bank receiving deposits and transacting a banking business to retain on hand all of the money of its depositors. The bank is not generally expected to be able to pay every depositor at once, but, if solvent, it must be able to pay or provide for its deposits and other debts as they are demanded in the usual course of business.

7. BANK — *Capital Stock and Surplus Fund.* In a criminal prosecution, under §16, chapter 43, Laws of 1891, against an officer of a bank for knowingly receiving deposits when his bank is insolvent, the capital stock and surplus fund are not to be considered as liabilities tending to show such insolvency. The capital and surplus of a bank are its resources, which may be used to pay its depositors and other creditors when there has been loss by loans or otherwise.

8. BANK OFFICER, *Not Presumed to Know What.*  In a criminal prosecution under § 16, chapter 43, Laws of 1891, a person holding the office of director and vice president of the bank is not conclusively presumed to know everything of importance that occurs in the bank, including its condition, in the absence of actual notice or knowledge thereof.

### Appeal from Kiowa District Court.

ON the 24th of April, 1894, there was filed in the office of R. A. Dowell, justice of the peace in and for Kiowa county, a warrant for the arrest of C. W. Myers, the defendant.  The body of the warrant was as follows:

"It appearing that there are reasonable grounds for believing that, at the county of Kiowa and state of Kansas, one C. W. Myers, as the vice president, manager and officer of the bank of Greensburg, of Greensburg, Kiowa county, Kansas, has committed the offense of feloniously and unlawfully receiving and accepting on deposit in said bank money, bank bills, notes, United States treasury notes, gold certificates, silver certificates, currency, and other notes, bills, drafts, gold coin, and silver coin, which then circulated as money, after said bank was known by said C. W. Myers to be insolvent, and of being accessory to, conniving at and permitting such deposits in said bank after the same became and was insolvent, you are commanded forthwith to arrest C. W. Myers, and bring him before some magistrate of the county of Kiowa, to be dealt with according to law."

After the defendant was arrested and brought before the justice of the peace, he moved to quash the warrant, for the reason that it did not state facts sufficient to constitute a public offense, and because it was indefinite and uncertain in not informing the defendant from whom the deposit was received, nor who was the owner of the deposit, and because it failed to state the value of said deposit, and for other reasons, which motion was overruled.  On motion of Hon. John T. Little, attorney general, the warrant was so amended as to read, "known by the said C. W. Myers to be;" whereupon defendant waived a preliminary examination upon the warrant, and was bound over to appear to the district court.  After the waiver of the preliminary examination by the defendant,

an information was filed, on the 4th of June, 1894, in the district court, containing two counts, one charging the defendant with having, on the 23d day of November, 1893, received a deposit from J. D. Mitchell, of the value of $388, knowing the bank to be insolvent, and the other count charging him with being accessory to and permitting the receiving on deposit in said bank from J. D. Mitchell, on the 23d day of November, 1893, of $388. On the 18th day of June, 1894, the defendant filed a plea in abatement to each of these counts. This plea in abatement was verified, and the state entering no denial of the allegation that defendant was not a fugitive from justice, stood upon the record, and the court overruled the plea in abatement. The defendant thereupon filed a motion to quash the information, which was overruled. The case then proceeded to trial. On the 10th day of July, 1894, the jury returned a verdict against the defendant of guilty as charged in the second count of the information. Subsequently, motions for a new trial and in arrest of judgment were filed. These were overruled by the court. On the 25th day of July, 1894, the defendant was sentenced as follows:

"It is the sentence of the court that you, C. W. Myers, be remanded to the custody of the sheriff of Kiowa county, Kansas, and that at such reasonable time as may be convenient for him you be by him conveyed to the penitentiary of the state of Kansas, in the city of Lansing, and that you be there confined at hard labor for the period of five years, and that you pay the costs of this case herein, taxed at $1,125.15."

The defendant appeals.


*L. M. Day,* and *Ady, Peters & Nicholson,* for appellant:

1. The court erred in overruling the plea in abatement. See *The State v. Bailey,* 32 Kas. 88, 89; *Redmond v. The State,* 12 id. 172; *The State v. Reedy,* 44 id. 190.

2. The motion to quash the information should have been sustained, because, first, it does not show that the defendant took the deposit with the intention of defrauding; second, it

does not show that anybody has been defrauded or has suffered a loss. See 1 Bish. Cr. L., § 205; 3 Greenl. Ev., § 123; *The State v. Bush*, 45 Kas. 138; 4 Am. & Eng. Encyc. of Law, p. 681.

3. The court erred in overruling the challenge for cause to the juror J. H. Chandler, who had an opinion that the bank was insolvent at the time it was closed. *The State v. Snodgrass*, 52 Kas. 174, 179.

4. Just prior to the statement by the state to the jury, the defendant moved the court to compel the state to elect upon which one of the counts it would proceed to trial, which motion was by the court overruled. There was no reason why the court should not have compelled the state to make its election.

5. When the state offered its first testimony, the defendant objected to the introduction of any testimony upon the information and upon either count of it, for the reason that the information and neither count of the information states a cause of action or an offense against this defendant, which objection was overruled, and defendant excepted. The errors of the ruling of the court upon the introduction of testimony were so numerous, as we think, that it would really be tiresome, and in this case unnecessary, to distinctly point them out.

6. As to the instructions given by the court: We pass them over with the assertion that not to exceed three out of the whole number, when considered together, are free from legal error. The 6th, 7th, 8th, 9th, 12th, 13th, 14th, 16th 17th, 18th, 19th, 20th and 21st instructions asked for the defendant should have been given. See Desty, Am. Cr. L., § 46*b*; Crim. Code, § 228; *The State v. Child*, 40 Kas. 484, 485; *The State v. Lawrence*, 43 id. 125; *The State v. Clark*, 46 id. 65; *Levan's Appeal*, 13 Atl. Rep. 804; *The State v. Palmer*, 50 Kas. 318; *The State v. Witt*, 34 id. 488, 496.

7. The motion for a new trial should have been sustained, not only for the reasons that there was error in impaneling the jury, in the introduction of testimony, in the instructions

14—54 KAS.

of the court, but also because the evidence failed to show the defendant guilty. See *The State v. Douglass*, 44 Kas. 618, 625.

The motion in arrest of judgment, raising practically the same questions as the motion to quash, should also have been sustained, for the reasons given by us under the proper heading.

8. The court erred in sentencing the defendant.

"A sentence fixing the commencement of the sentence at a period about two years subsequent to the date of sentence, no reason appearing why it was so made to commence, is erroneous, and it will not be presumed in favor of it that it was cumulative." *Lockhart v. The State*, 13 S. W. Rep. (Tex.) 1012. See, also, *In re Strickler*, 51 Kas. 700.

*John T. Little*, attorney general, *E. A. Fisher*, and *Wm. McK. Milligan*, county attorney, for The State:

The court did not err in overruling the defendant's plea in abatement. See *The State v. Smith*, 13 Kas. 296; *The State v. Bailey*, 32 id. 83.

The appellant complains because the court overruled his motion to quash the information. This is a statutory offense, and the information follows the words of the statute. That is sufficient. *The State v. Foster*, 30 Kas. 365.

The appellant complains that the court erred in overruling his challenges for cause to certain jurors. None of the jurors who were retained to try the case testify that they had an opinion or even an "impression," "idea," or "belief," as to the defendant's guilt or innocence. None of the jurors testify that they had an opinion, impression, idea or belief as to whether or not the bank of Greensburg was insolvent on the 23d day of November, 1893. Indeed, all who were questioned upon that subject say that they had no opinion, idea, impression or belief on that subject. *The State v. Medlicott*, 9 Kas. 257; *The State v. Spaulding*, 24 id. 1.

The defendant moved the court to compel the state to elect upon which one of the counts it would proceed to trial. The

court below overruled this motion, and the appellant alleges that there was error in so doing. Upon this point, it is sufficient to refer to the cases of *The State v. Hodges*, 45 Kas. 389; *The State v. Zimmerman*, 47 id. 242.

The appellant, so far as we can see, does not make it appear that the court below committed a single substantial error in the introduction of the testimony. His counsel seem to forget an elementary and very wholesome rule of evidence, to wit: That when it is necessary to prove the results of voluminous facts or of the examination of many books and papers, and the examination cannot be conveniently made in court, the results may be proved by secondary evidence. 21 Am. & Eng. Encyc. of Law, p. 991; *Burton v. Briggs*, 20 Wall. 125; Whar. Ev. (3d ed.), ch. 80; 1 Greenl. Ev. (14th ed.), 93; *L. T. & S. W. Rly. Co. v. Paul*, 28 Kas. 816.

We are not called upon, however, to discuss whether or not the court properly instructed the jury. There is absolutely no exception shown by the record to the instructions given by the court, and hence this court cannot review that matter. *Comm'rs of Allen Co. v. Boyd*, 31 Kas. 765. The defendant, by his failure to except to the instructions given, assented to the propositions of law therein contained, and waived his exceptions to the refusal of the court to give instructions containing contrary propositions.

Counsel raise the question of a sufficiency of the evidence to sustain the verdict; but, unfortunately, the appellant is not in a shape to raise that question in this court, for the reason that the record does not contain all the evidence. And on that proposition we desire to call the court's attention, first, to the fact that nowhere in the body of the bill is there a statement that it contains all the evidence. It is true that in the certificate of the judge, made at the time he settled and signed the bill, there is a statement that it contains all the evidence. There is absolutely no ground for a distinction between a case-made and a bill of exceptions in this particular. See *Lebold v. Ottawa Co. Bank*, 51 Kas. 381; *Stout v.*

*Turner*, 102 Ind. 418; *The State v. Bohan*, 19 Kas. 28; *Evansville Rly. Co. v. Lavender*, 34 N. E. Rep. 34.

Counsel find fault with the sentence of the court. The sentence is neither indefinite as to the time when it shall take effect nor as to the time of imprisonment. The directions to the sheriff are mere surplusage, and strictly no part of the sentence at all. *Hollon v. Hopkins*, 21 Kas. 638. But even if they were, the sheriff is simply required to convey Myers to the penitentiary within a reasonable time, which is just what the law would require anyway.

The opinion of the court was delivered by

HORTON, C. J.: A preliminary question is presented. Upon the part of the state, an objection is urged against the consideration by this court of the errors assigned, upon the ground that the bill of exceptions is not properly authenticated, and is also incomplete and imperfect on its face. The record was filed in this court on August 4, 1894. The certificate and authentication to the bill of exceptions signed by the trial judge states that the bill of exceptions is "in two volumes, numbered one and two." The certificate of the district clerk, attached at the end of volume two of the record, states "that the within and foregoing is a full, true, correct and complete copy of the original bill of exceptions in the case of *The State of Kansas v. C. W. Myers*, as appears of record and now on file in my office, and that said bill of exceptions contains full, true and correct copies of all the orders, pleadings, process and proceedings in said cause, as the same appears respectively on file in my office." This certificate is sufficient, within the authority of *Lauer v. Livings*, 24 Kas. 275. In the absence of any proof that the two volumes should not be considered together, as certified to by the trial judge, we may regard the record presented as contained in the two volumes filed and as sufficiently authenticated. The challenge of the record will be overruled.

2. Case, followed.

1. Appeal—record—certificate of trial judge.

The trial court committed no error in overruling the plea in abatement. One of the purposes of a preliminary examination is to give the defendant a reasonable notice of the nature and character of the offense charged against him, and "The state should in all cases give the defendant such notice by a proffered preliminary examination, unless he waives the same or is a fugitive from justice." (Crim. Code, § 69.) The defendant was not a fugitive from justice, but he waived the proffered preliminary examination. The complaint and warrant upon which it was issued stated in general language the offense alleged. We think that "The defendant should take notice from the evidence introduced by the state on the preliminary examination, as well as from the papers in the case, of the nature and character of the offense charged against him." As the defendant expressly waived the preliminary examination, he cannot now be heard to say by a

3. Preliminary examination— plea in abatement that he should be discharged
waiver not to
be revoked. because he had no preliminary examination prior to the filing of the information against him. (Crim. Code, § 69; *The State v. Smith*, 13 Kas. 296; *The State v. Bailey*, 32 id. 83.)

There was no error on the part of the trial court in refusing to compel the state to elect upon which one of the counts it would proceed to trial. The election in such cases as this rests in the sound judicial discretion of the trial court. (*The State v. Hodges*, 45 Kas. 389; *The State v. Zimmerman*, 47 id. 242.)

It is insisted "that the information does not show the defendant took the deposit with the intent of defrauding, and that it does not show that anybody has been defrauded, or has suffered a loss." This was a prosecution under § 16, chapter 43, Laws of 1891, and not under § 79a of the crimes act, Gen. Stat. of 1889. (Laws of 1879, ch. 48, § 1.) Under the latter statute, no prosecution could be maintained unless " loss occur by reason of such deposit." Section 16, chapter

43, Laws of 1891, omits this provision. There-
fore, the exceptions taken to the information are
not tenable. Upon the trial, Breidenthal, the
bank commissioner, was asked: "State in what
condition you found the bank, and what you did in connec-
tion with that, as to the condition of the assets and liabilities,
and the entire condition of the bank at that time." The wit-
ness answered as follows: "That's a little difficult for me
to answer without going over the whole thing." Then the
following question was asked: "I will try to make that
question broad enough so you can answer it. Everything you
did, and every person you have examined; any witness you
examined by which you based your conclusions of the condi-
tion of the bank; everything you did — I want that question
to cover everything you did before you took possession of the
bank." This witness was permitted to state "that he found
the bank affairs generally and particularly in very bad condi-
tion, and that an item of $3,000, according to the statement
of the cashier, was absolutely worthless." This evidence was
objected to by the defendant, and a motion was made to strike
it out. This was overruled, and exceptions taken. Other
similar evidence was received, against the exceptions of the
defendant.

It was competent upon the part of the state to show that
the bank commissioner took possession of the bank, together
with its assets, and the date thereof, but his evidence should
have been limited to facts within his own knowledge, not
what he was informed by others, unless the defendant was
present at the time of the conversations. The reports of the
bank to the commissioner of its condition, made under the
direction of the defendant or with his knowledge, were com-
petent for the consideration of the jury. If Breidenthal, or
other witnesses competent so to do, had inspected the books,
accounts and papers of the bank, while they could not give
evidence of their particular contents, they might have been
allowed to speak of the general balances of the bank with

*(margin note:)* 4. Insolvent bank, accepting deposits — information.

parties dealing with the bank, without producing the books, accounts and papers before the jury, if it were impossible or impracticable so to do. (1 Greenl. Ev., § 93.) "When books and documents introduced in evidence at the trial are multifarious and voluminous, and of such a character as to render it difficult for the jury to comprehend material facts, without schedules containing abstracts thereof, it is within the discretion of the presiding judge to admit such schedules, verified by the testimony of the person by whom they were prepared, allowing the adverse party an opportunity to examine them before the case is submitted to the jury." (*B. & W. Rld. Corp. v. Dana*, 1 Gray, 83, 104.) But the opinion of a witness whether the bank was insolvent at the time of the deposit alleged in the information ought not to have been received. (*Brundred v. Machine Co.*, 4 N. J. Eq. 295.) Facts, and not opinions, are listened to by judicial tribunals. The jury are called upon to form their conclusions upon the issues involved from the facts before them, and not upon the opinions which may be entertained upon the subject of controversy, save in exceptional cases.

5. Bank officer— prosecution— opinion evidence—error.

Upon the trial, the defendant asked the court to instruct the jury as follows:

"13. The law of this state does not require a bank to retain on hand all of the money of its depositors.

"14. Insolvency is that state of a bank which from any cause it is unable to pay its debts in the ordinary or usual course of business. It is not expected to be able at once to pay every debt it owes, but it must be able to pay or to provide for its debts as they fall due in the usual course of business.

6. Deposits—mode of payment.

"15. 'Insolvency,' in the ordinary acceptation of the term, when applied to a bank, means inability to meet liabilities in the usual course of business."

The court refused to give these, but instructed the jury as follows:

"A bank, like an individual, is insolvent when it is unable to pay its debts. 'Insolvency' means a present general ina-

bility to answer in the course of business its liabilities exist-
ing and capable of being enforced. A bank is insolvent when
it is unable to meet its liabilities as they become due in the
ordinary course of business. It does not necessarily follow
that a bank is solvent when its assets are equal to or in ex-
cess of its liabilities. But in order to be solvent its resources
must be equal in value to its liabilities, and be of such a char-
acter as to be available at the command of the bank, to be
used in paying its liabilities past due, whenever the same may
be demanded in the ordinary course of business. And all
debts owing by the bank to any and all persons whomsoever,
including its capital stock, surplus fund and unpaid salaries
of its officers are its liabilities, while all debts owing to the
bank, together with all other property owned by it, constitute
its assets or resources."

The instructions requested ought to have been given, and
the giving of the instructions referred to rendered this error
more serious. It appears from the facts disclosed upon the
trial that C. W. Myers was, the, vice president and general
manager of the Bank of Greensburg, and that on the 23d day
of November, 1893, W. L. Henderson presented to M. A.
Nelson, the cashier of the bank, a check drawn by a commis-
sion firm in the city of Wichita upon the Sedgwick County
Bank, of Wichita, Kas., payable to the order of W. L. Hen-
derson, which check was indorsed by Henderson, and at his
request the amount of the same, viz., $388, was placed to the
credit of J. D. Mitchell. The defendant was in Kingman,
distant about 100 miles from Greensburg, on the day when
this check was presented and received. The amount of the
check was entered to the credit of J. D. Mitchell. Afterward,
on the 22d day of December, 1893, J. W. Breidenthal, the
bank commissioner for the state, closed the bank and took
possession of its books, papers, moneys, and assets, and after-
ward, about the 15th day of February, 1894, T. C. Eberle
was appointed by the judge of the district court of Kiowa
county as receiver of the bank, and at or about that time took
possession of the books and assets of the same and ever since
has continued to be the receiver. At the time the bank was
closed by the commissioner, it had no paper that had gone to

protest, and had not refused the payment of any checks or drafts drawn upon it. There was also $14,506.03 of cash in the bank at that time. The defendant claimed that the liabilities of the bank, not including the capital stock and undivided profits, were $73,089.12, and that the assets of the bank were $103,518.20. On the part of the state it was claimed that the value of the assets was $53,898.60 only, and that the actual liabilities, including capital stock, were over $100,000. Whether the Bank of Greensburg was insolvent or not when the deposit for J. D. Mitchell was received, on the 23d of November, 1893, was an important fact to be decided by the jury, and the evidence was conflicting.

In a criminal prosecution under § 16, chapter 43, Laws of 1889, against an officer of a. bank for knowingly receiving deposits when his bank is insolvent, the capital stock and surplus fund cannot be considered as liabilities or debts in determining the insolvency; otherwise, the greater the capital of the bank and the larger its surplus fund, the more insolvent it will be. The contrary is the actual fact. The capital and surplus of a bank are its resources which may be used to pay its depositors and other creditors, when there have been losses by loans or otherwise. If a bank, by using its capital or surplus, or both, can pay promptly its deposits and other debts, as they become due in the ordinary course of business, it is not insolvent. Upon the books and in the official statements of a bank, capital stock and the surplus fund are denominated as liabilities, but they are resources of the bank with which to transact its business. The more capital a bank has, the better able it is to meet its deposits and other debts. The more surplus on hand, the greater its ability to pay promptly its deposits and other debts. If a bank is able to pay promptly every depositor and every other creditor in the ordinary course of business, the bank, under § 16 of said chapter 43, is solvent, whether there is any surplus or capital to be distributed afterward to stockholders or not. Section 16 was adopted by the legislature for the protection of the depositors,

7. Bank—capital stock and surplus fund.

not for the benefit of the officers or stockholders of the bank. It is insisted that this case ought not to be reversed because the defendant did not except to the instructions given, but the defendant made sufficient exceptions to the refusal of the court to give the instructions prayed for, and this refusal, being error, was aggravated by the instructions given.

As another trial will be necessary, it is proper that we should call attention to the following instruction which was given, although apparently not excepted to:

"A person who holds an office of director and vice president of a bank is conclusively presumed to know the general condition and management of his bank, and to know everything of importance that occurs therein, either at the time it occurs, or soon thereafter."

In a criminal case, like this, such an instruction is erroneous. The jury may take into consideration the position of an officer of a bank and his control of its affairs in determining whether he knew its condition as to solvency or insolvency, but it is erroneous to charge in a criminal case that a person who holds the office of director and vice president of a bank is conclusively presumed to know everything that occurs in the bank. In *Savings Bank v. Wulfekuhler*, 19 Kas. 60, the rule of the liability of a director and vice president of a bank was stated as the court instructed the jury; but that was a civil action, and this court ruled that, although the director knew nothing of the condition or management of the bank, yet as a matter of law he could not, as against the interests of the bank, its stockholders, or creditors, plead ignorance, and thereby profit by his own negligence—this upon the theory that an officer of a bank cannot relieve himself from civil liability by his failure to perform his official duty; but the law is not so harsh as to punish a party criminally for the want of ordinary diligence in the discharge of his duty. · If an officer, director, cashier or manager of a bank knowingly permits a clerk or other employé of the bank to violate the provisions of § 16 of said chapter 43 by receiving deposits, such officer,

8. Bank officer, not presumed to know what.

director, cashier or manager is guilty, within the terms of the statute, but he is not guilty if he acts ignorantly and innocently.

The other errors alleged, including the impaneling of the jury, need not be commented upon, because the prior decisions of the court are sufficiently decisive of the matters discussed.

The judgment of the district court will be reversed, and the cause remanded.

All the Justices concurring.