The State v. Garrett.

THE STATE OF KANSAS v. W. H. GARRETT.
No. 10589.

1. EXTRADITION — *Waiver.* A person against whom a warrant has been issued by a magistrate of the state, and who is outside of the limits of the state, may waive the issuance of extradition papers, and voluntarily surrender himself to the jurisdiction of the courts of the state.

2. ———— *Voluntary Surrender to Jurisdiction.* Where such a warrant is placed in the hands of a sheriff of the state, who meets the person charged beyond the limits of the state and informs him that he has been charged with an offense and that he has a warrant for his arrest, which is distinctly read to him, and such person then accompanies the officer into the state without objection or resistance, and pleads to the charge, knowing full well when he starts with the officer that they are outside of the state of Kansas, that the sheriff is a Kansas officer, and that the warrant has been issued by a Kansas magistrate, the officer using no force and practicing no deception, the trial court does not err in holding that he came into the state voluntarily, and that the court acquired jurisdiction of his person.

3. TRIAL — *Statement to Jury.* An oral statement made by the judge to the jury after the case had been submitted to them, in which he admonished them that it was important that they should agree upon a verdict, and directed their return to the jury-room to make another effort to that end, examined, and *held* not to constitute prejudicial error.

*Appeal from Ford District Court.*
*Hon. Francis C. Price, Judge.*

AFFIRMED.                                    OPINION FILED JUNE 6, 1896.

*Ed. H. Madison*, for appellant.

*F. B. Dawes*, attorney general, and *J. M. Kirk-patrick*, county attorney, for The State ; *M. W. Sutton*, of counsel.

The opinion of the court was delivered by

JOHNSTON, J. :   W. H. Garrett was convicted in the district court of Ford county upon a charge of stealing 47 head of cattle, and the punishment adjudged was imprisonment at hard labor for a term of six years. In his appeal it is insisted that he never was in fact legally arrested and that the trial court never acquired jurisdiction.    A warrant for his arrest was issued by a justice of the peace of Ford county. and placed in the hands of the sheriff of that county, who found the defendant near the south line of Kansas, in the territory of Oklahoma.

1. Extradition— surrender to jurisdiction.

Upon meeting Garrett, the sheriff talked with him for a few minutes concerning the cattle transaction and inquired with reference to a young man named Smith, who is alleged to have been a confederate of Garrett in the commission of the offense.    He finally informed Garrett that he had a warrant for his arrest, and, upon request, read it distinctly to him.    Garrett was acquainted with the sheriff, knew that he was an officer of Ford county, Kansas, and that the warrant had been issued by a justice of the peace of that county. Nothing was said about a requisition, nor did he make any objection to accompanying the officer.    He suggested to the officer that they should wait until morning before going to Dodge City, and, upon being

informed by the officer that he desired to go to Dodge City that evening, he requested permission to speak to his wife and to change his clothes, after which he would be ready to accompany him. Within a few minutes the preparation was made, and taking his own horse he rode off to Dodge City with the officer, without making any objection or resistance whatever.

It seems that no force was used nor any deception practiced by the officer to induce Garrett to accompany him. It is evident from the testimony that both the sheriff and Garrett fully understood that they were outside of Kansas, and both had knowledge that the warrant had no force within the limits of Oklahoma. If any force, or threats of force, had been used to bring him into the state, as there was in the cited case of *The State v. Simmons*, 39 Kan. 262, the arrest would have been illegal, and the court without jurisdiction, or if he had been inveigled into the state by deceit or fraud, the result would have been the same. It was competent, however, for Garrett to waive the issuance of extradition papers, and voluntarily surrender himself to the jurisdiction of the state. While there was no explicit declaration that he did make such a surrender, everything he stated indicated a willingness to accompany the officer. There was no display of weapons, nor any attempt at coercion by the officer. With a full knowledge of the situation, Garrett stated that he was ready to go to Dodge City to meet his accusers, and he furnished the facilities for going. Under the circumstances, we think he came into the state voluntarily, and that the court acquired jurisdiction of his person.

Complaint is made of the refusal of an offer to show the statements made between Garrett and Smith, who was also charged with the theft of the cattle. Garrett claimed that he knew nothing of the stealing but only

acted as an employee of Smith in driving the cattle into the state, and the statements offered in testimony related to that matter.  A part of the testimony offered was of a self-serving character, and was not admissible.  Some of it was too indefinite to be received, and, so far as it was competent, it was supplied by other testimony which was received without objection. We think no material error was committed by the refusal of the offer.

The remaining assignment of error is based upon remarks made by the judge to the jury after the submission of the case.  After deliberating for about 24 hours the jury were called into court, and in the presence of the defendant the inquiry was made as to the probability of arriving at a verdict.  Some of them replied that an agreement might be reached, and others thought that it was impossible.  The court then, in a few words, admonished them that it was important that they should agree upon a verdict if it was possible for their minds to come together upon the question of the innocence or guilt of the defendant; that they should fairly and frankly consider the testimony and the instructions given them by the court, and if, upon a further consideration of the same, any of them became satisfied that the position first taken by them was wrong, they should not hesitate to yield. · The jury then retired, and several hours afterward they were returned into court, and upon an inquiry from the judge the foreman of the jury stated that he thought that an agreement would be reached.  The court directed them to return to the jury-room for further deliberation, and added that they should read over the instructions of the court which had been given them, and apply them to the facts of the case, and, if possible, agree upon a verdict.  It was a considerable time after the admoni-

2. Statement of judge to jury.

tion was given before an agreement was reached and a verdict returned. Although the practice of lecturing a jury or urgently pressing them to an agreement is of doubtful propriety, we think the defendant suffered no prejudice from the oral remarks of the judge. There was no attempt to coerce the will or judgment of any juror, and outside of the mere declaration that an agreement was desirable and important, the statements made substantially corresponded with what was embraced in the written charge.

We think that no material error was committed, and therefore the judgment of the district court will be affirmed.

All the Justices concurring.