The State v. Molz.

No. 18,950.

THE STATE OF KANSAS, *Appellee*, V. ADAM MOLZ,
*Appellant.*

SYLLABUS BY THE COURT.

1. QUALIFICATION OF JURORS—*Question of Fact—Judicial Discretion.* The qualification of a juror, who has testified in regard thereto in court, is a question of fact and a matter of judicial discretion to be determined by the court, and its decision thereon will not be disturbed on appeal unless it clearly appears that the court has made a mistake or has abused its discretion.

2. VENUE — *In Criminal Action — Location of Crime — Common Knowledge.* Where the venue in a criminal action is established by evidence that the act charged was committed in a certain direction and distance from a town in the county from which the court and jury have common knowledge that the place is within the county, a verdict of guilty, approved by the court, will not on appeal be set aside by reason of the failure of formal proof of the venue.

3. SALES—*Hay—False Scales—Competent Evidence.* Under the facts of this case, evidence of the weight of the hay sold, as ascertained by weighing the same upon other scales, was competent to establish the true weight thereof.

Appeal from Kearny district court; GEORGE J. DOWNER, judge. Opinion filed March 7, 1914. Affirmed.

*E. R. Thorpe*, of Lakin, *Clad Hamilton*, and *Clay Hamilton*, both of Topeka, for the appellant.

*John S. Dawson*, attorney-general, *S. N. Hawkes*, assistant attorney-general, and *A. R. Hetzer*, county attorney, for the appellee.

The opinion of the court was delivered by

SMITH, J.: The appellant, Adam Molz, was convicted of violating section 9752 of the General Statutes of 1909 in giving false weights for certain hay sold.

Several assignments of error are made, but only three or four are urged in appellant's brief. The principal objection urged is the retention of one Gillock as a juror over the objection of the appellant.

Gillock testified, among other things, on his examination that he had formed such an opinion in the case as would require some evidence to remove; that he did not believe he could go into the trial with as fair and unbiased an opinion as he would have if he had not heard of the case; that he thought he had an opinion based to a certain extent upon statements that had been made to him by parties who purported to know the facts; that notwithstanding what he had heard he thought he could sit as a juror in the trial of the case and be governed according to the law and the evidence and render a fair and impartial verdict.

Numerous authorities from this court are cited pro and con as to whether, under such evidence, the juror was qualified to sit in the trial of the case. Most of the cases cited by the appellant are homicide cases, which from their very nature excite a great deal of interest and discussion of the supposed facts in the county where the trial is had, being generally the county in which the crime is charged to have been committed, and people are apt to take opposite sides in such cases. The appellee also cities cases of like character in which it is held that as strong expressions as were given by the juror in this case are not sufficient to disqualify the juror.

After all that has been said and written on the subject, the question of the competency of a juror is a question of fact to be determined by the court, and unless it is evident that the court has made a mistake to the prejudice of the accused, its decision as to such qualification should not be reversed. In *The State v. Stewart,* 85 Kan. 404, 116 Pac. 489, one of the later

The State v. Molz.

cases of this character decided by this court, it was said:

"The finding of a trial court as to the qualification of a juror is reviewable like any other finding of fact based on evidence, and if, upon the evidence, the trial court decides that the juror is free from bias, prejudice or interest, and has no disqualifying opinion, its decision will not be disturbed on appeal unless disqualification appears as a matter of law or it is disclosed that there has been an abuse of the discretion with which the court is vested." (Syl. ¶ 4.)

We think that it does not clearly appear from the answers of the juror that he was disqualified as a matter of law or that there was an abuse of the discretion of the court in overruling the challenge.

The evidence disclosed that the hay was all weighed on appellant's hay scales at his home, and was reweighed on scales belonging to other persons. It is contended that the court erred in overruling appellant's objection to the introduction of evidence of the weight of any part of the hay unless it be first shown that such other scales had been tested in conformity with law.

It appears without controversy that there were nine wagon loads of the hay; that all of the loads were first weighed with the wagon over appellant's scales, and after the hay was unloaded the wagon was weighed back, the difference in weight being the weight of the hay. All the loads with the wagon, and the wagon after being unloaded, were also weighed over scales belonging to a Mr. Sowers. One load and wagon separately were weighed in like manner over a Mr. Futhey's scales.

Mr. Sowers, upon whose scales all the loads were weighed, testified that the tickets presented to him on the witness stand were the weights of the hay, and these weights were correct unless he made a mistake in subtraction; that the scales were being used practically

every day at the time the hay was weighed and were weighing correctly. He said:

"On the day in question I not only tested them but had a man go under the scales and see that all the bearings were clean. The scales were tested at this time by placing a 50 pound balance weight in the center and one on each of the four corners. This test proved that they weighed correctly. My scales are Fairbanks."

A tabulation of the weights of each of the nine loads is made by appellant, giving the gross weight, weight of wagon and the net weight of hay; also indicating upon whose scales the several weights were taken. By such tabulation it appears that all the loads were weighed over appellant's scales and over Sowers' scales and that one of the nine loads was also weighed over Futhey's scales. The weight of the load that was weighed on Futhey's scales also shows exactly the same net weight as by Sowers', but by Futhey's scales both the loaded wagon and the empty wagon weighed twenty pounds more than over Sowers' scales. The net weight of hay on this load appears to have been forty-five pounds more by appellant's scales than by either of the others, and the aggregate difference of net weight of hay in the nine loads was 816 pounds greater over appellant's scales than over Sowers' scales. Moreover, there was evidence from which the jury may have concluded that there was active fraud by putting on or taking off a small weight on the scale beam of appellant's scales.

That scales of this kind made by different manufacturers are made to approximate mathematical certainty is a matter of general knowledge; also that, with the same weight of platform and free working of the parts as when made, they weigh accurately for an indefinite period. The ordinary changes of climate and temperature cause them to vary but slightly. It is also a matter of common knowledge that when scales of this kind are out of balance by reason of the plat-

form being too heavy or too light and a loaded wagon is weighed thereon, then unloaded and the wagon weighed back, the scales being in the came condition, the net weight is not affected thereby. The excess weight or shortage is the same in each instance. A large portion of commercial business is done in reliance upon the accuracy of such scales, hence the presumption in favor thereof; there is little room for reasonable doubt of their accuracy, especially when tested as the Sowers' scales are shown to have been at the time of weighing the hay. The evidence in this respect was competent.

Again, it is said that there was no evidence that the venue was in Kearny county. There appears to have been no explicit evidence that the purchase of the hay was made in Kearny county, but there was evidence that the hay was bought and paid for at appellant's place, and there was evidence of the location of that place. Tebo testified:

"I live nine miles west of Lakin, Kearny County, Kansas, and am the complaining witness. About the 12th or 13th of January, 1912, I had a business dealing with Adam Molz, by which I contracted with him for 16 tons of alfalfa hay. On the 15th I went to Mr. Molz's place, had a further talk with him and paid him. The contract price was $14 per ton, and I gave him my check on the Kearny County Bank for $224, payable to his order (Exhibit A, p. 276). The hay was baled and on Mr. Molz's place, something like five or six miles northeast of Lakin, and about a half mile north and a half mile west from Deerfield."

Probably both the court and the jury knew this was in Kearny county and a glance at a map of the county confirms it. In the locality it may be said to be a matter of common knowledge that appellant's place was in

Kearny county. The judgment will not be reversed for this informality although it is the better practice to name in the evidence the county where the venue is laid.

The judgment is affirmed.