No. 30,892.

THE STATE OF KANSAS, *Appellee,* v. W. S. TUCKER, *Appellant.*

(19 P. 2d 436.)

Opinion filed March 11, 1933.

*George F. Beezley,* of Girard, *C. O. Pingry* and *Carl Pingry,* both of Pittsburg, for the appellant.

*Roland Boynton,* attorney-general, *Robert S. Lemon,* county attorney, *T. J. Karr,* assistant county attorney, and *D. G. Smith,* special prosecutor, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: W. S. Tucker, a former county clerk, was found guilty of embezzlement of funds which came into his hands as such officer. He has appealed and contends that the court erred: (1) In overruling his plea in abatement and motion to quash, and (2) his motion to set aside or correct a journal entry pertaining to the first trial; (3) in denying his plea in bar, and (4) his challenge of a certain juror for cause.

The question presented on the plea in abatement and motion to quash arises in this way: A complaint was filed before the justice of the peace charging defendant with embezzlement in twenty-two counts, and a warrant of the same tenor was issued. Defendant was arrested under this warrant, and at the time set for his preliminary examination he waived the same and was bound over to the district

court. The entry made on his docket by the justice of the peace, after reciting the appearance of the county attorney for the state, reads:

"Defendant, W. S. Tucker, appeared in person . . . and waived preliminary examination. Whereupon the court finds that the crime of embezzlement has been committed and that there is probable cause to believe that the defendant W. S. Tucker is guilty of its commission ·. . . ."

The point made by defendant on his plea in abatement and motion to quash the amended information is that the magistrate found "the crime of embezzlement" had been committed, not that crimes of embezzlement had been committed. It is argued this is a finding that but one of the twenty-two offenses charged in the complaint and warrant had been committed and that it did not justify the filing of an information on more than one count. We do not so interpret the record. Possibly it would have been better to have used the word "crime" in the plural rather than in the singular, but as used it is not misleading nor seriously inaccurate. Defendant certainly waived his preliminary examination with relation to the crime of embezzlement committed under all the circumstances and in all the ways charged in the complaint and set forth in the warrant. In *State v. Myers*, 54 Kan. 206, 38 Pac. 296, it was held:

"Where the complaint and warrant in a criminal case state in general language the offense charged against the defendant, and such defendant waives a preliminary examination thereon, he cannot be heard, after an information has been filed setting forth fully and specifically the offense attempted to be charged in the warrant, to say that he has had no preliminary examination." (Syl. ¶ 3.)

To the same effect see *State v. Bland*, 120 Kan. 754, 756, 244 Pac. 860, and authorities there cited.

Appellant's contentions concerning the motion to correct the journal entry pertaining to the first trial and his plea in bar may be considered together, and arise in this way: At the session of court prior to the trial in the first division of the court, from which this appeal is taken, there had been a trial in the second division of the court, at which the jury had been discharged before a verdict was reached, and, defendant contends, under such circumstances as to amount to former jeopardy.

The abstract before us discloses that the trial judge at the first trial kept exhaustive notes in his own handwriting on loose sheets of paper. The trial appears to have covered the time from October

14 to October 22, 1931. After the jury had retired the trial judge handed these loose sheets to the court reporter and asked him to condense them into memoranda for his trial docket. This was done by the reporter writing a condensed statement of the notes on a sheet of paper, which was pasted in the trial docket. Among other things these notes show:

"Case submitted to jury at 10:05 a.m. *October 22, 1931, jury called in at 5:00 p.m. and reported unable to agree to a verdict. Jury polled. The court finds a mistrial.*"

The words italicized were in the judge's handwriting.

It appears that no entry was made for the journal of the court at that time. At the next term of court, when the case came on for trial in the other division, the absence of an entry on the journal was noticed. Counsel for the state asked permission to prepare an appropriate recital of what took place and have it properly entered on the journal. This was done by the county attorney and the trial judge who had handled the case in the second division, and it was permitted to be filed by the judges of both divisions. This entry in the journal recites:

"Thereupon the plaintiff completed its argument and the case submitted to the jury at 10:05 a.m., October 21, 1931. At 12 o'clock noon jury was sent to lunch in charge of the sworn bailiff. 6 p.m. the jury was sent to dinner in charge of the sworn bailiff and the court instructed said bailiff to keep the jury together for the night.

"October 22 having arrived, the jury still being in deliberation, said jury was sent to breakfast in charge of the sworn bailiff. 12 o'clock noon jury was sent to lunch in charge of the sworn bailiff. Jury was called in open court at 5 p.m. on the 22d day of October, 1931, and represented to the court that they were unable to agree upon a verdict.

"At 5:05 p.m. the jurors are brought into open court, and being all present and separately inquired of, by the court, and each of them answers that the jury is unable to agree upon a verdict and answers that there is no reasonable probability or possibility of their agreeing upon a verdict in the event of more time being given for deliberation; and the court being fully advised in the premises finds that there is no reasonable probability of their agreeing upon a verdict and finds that upon investigation and inquiry that it is necessary for the said jury to be discharged, and thereupon they were discharged from further consideration of this cause and this cause was, by the court, continued until the next term of this court."

Defendant moved to set aside or correct the entry made for the journal by the county attorney and trial judge of division two on the ground, *first*, that it had been done without proper notice to him

or his attorneys; and, *second*, that it did not correctly recite what took place at the time the jury was discharged. Evidence was taken on this motion and it was overruled. Complaint is made of that ruling. It is true defendant and his counsel did not have proper notice of the preparation and filing of this entry for the journal. That should have been prepared soon after the discharge of the jury on the first trial. Delay in preparing appropriate records of courts is a matter that has caused much confusion, has sometimes affected substantial rights, and later has consumed expensive time of courts and of counsel. In an effort to avoid that this court has adopted rules 32 and 33 in relation thereto. Notwithstanding this, counsel sometimes neglect this important part of their work. Had these rules been complied with at the time of the discharge of the jury on the first trial the time of the trial court and this court to consider the matter could have been used for other purposes. Aside from the belated preparation of this record there is nothing wrong with the discharge of the jury. Indeed, the court's temporary trial notes leave little room to question what was done. They show the jury reported it was unable to agree to a verdict, that the jury was polled, and from this report and the polling of the jury the court found a mistrial. This shows an appropriate inquiry and a definite finding of necessity to discharge the jury. The belated entry made in the journal shows this more fully and completely. The evidence taken discloses that the case was submitted to the jury at 10:05 a.m., October 21. It was kept together all night and continued its deliberations until 5 p.m., October 22, at which time the foreman informed the court that the jury had been unable to agree, he thought it not possible they could agree, that it stood numerically eight to four, and there had been no change in that standing since four o'clock p.m. the previous day. On being interrogated, each of the jurors concurred in that statement. From this, and in view of all the facts and circumstances, the court found that there was a mistrial. The evidence of what took place sustains the matters set forth in detail in the entry made for the journal and sufficiently shows that it was necessary to discharge the jury because of its inability to agree. It was proper for the court to complete its records. (*State v. Curry,* 74 Kan. 624, 87 Pac. 745; 16 C. J. 251.)

Appellant cites and relies strongly on *State v. Allen,* 59 Kan. 758, where it was held:

"Where a defendant has been placed upon trial on a criminal charge and the jury is duly impaneled and sworn, the court cannot arbitrarily discharge the jury before a verdict is returned; and a discharge in such case unless an absolute necessity, and for reasons which are sufficient in law, will operate as an acquittal."

Appellant stresses the words "absolute necessity." It will be noted, as used above, they are connected with "reasons which are sufficient in law." That, of course, is the real test. The record made by the court in that case reads:

". . . the jury, not having agreed upon a verdict in the above-entitled cause, the jury is discharged from further consideration of this case. . . ." (p. 759.)

This was held not to show inability to agree. There was a similar holding in *State v. Start*, 62 Kan. 111, 61 Pac. 394, where the record was:

". . . the jury, not having agreed upon a verdict was by the court discharged." (p. 112.)

And in *State v. Klauer*, 70 Kan. 384, 78 Pac. 802, the jury, after deliberating twenty-four hours, returned with a statement that they were unable to agree, and were discharged. The judge was satisfied in his own mind they could not agree, but this conclusion was reached from the length of time the jury had been deliberating and from inquiries which had been made by the jury. The court made no investigation or inquiry before the jury was discharged whether they could agree or not, and no judicial investigation or determination was made at the time, and no finding of the necessity for a discharge was entered of record. This was held to be insufficient.

The above cases are much like that of *People, ex rel. Stabile, v. Warden, etc.*, 202 N. Y. 138, 95 N. E. 729. There a jury, deliberating on a case, was brought into court and the following colloquy took place:

"The Court: Mr. Foreman, have you agreed upon a verdict?
"The Foreman: Not as yet.
"The Court: Well, I am loath to keep you together any longer. You have been in session now for over five hours, and I have charged you as fully upon the law as I can charge you. I do not see that there is any additional explanation of the law that I can give you. I discharge you from further consideration of the case." (p. 140.)

This was held to be insufficient and to amount to an arbitrary discharge, the court citing *State v. Allen*, 59 Kan. 758, 54 Pac. 1060, and other cases.

Our constitution reads: "The right of trial by jury shall be inviolate." (Bill of Rights, § 5.) This applies to the trial of one charged with a felony. (*State v. Simmons,* 61 Kan. 752, 60 Pac. 1052.) It also provides: "No person shall be . . . twice put in jeopardy for the same offense." (Bill of Rights, § 10.) Our statute (R. S. 62-1412; 60-2914) pertaining to the point reads:

"The jury may be discharged by the court . . . after they have been kept together until it satisfactorily appears that there is no probability of their agreeing." (R. S. 60-2914.)

From these provisions it is clear that when one is charged with a felony and a jury has been selected and sworn to try the case the court cannot arbitrarily and without a reason which is sufficient in law discharge the jury without the same operating as a discharge of the defendant, and the decisions above cited so hold. From the nature of things, however, there are circumstances which may arise which make it necessary that a jury be discharged. These are mentioned in the statute above quoted, one of them being after the jury has been kept together "until it satisfactorily appears that there is no probability of their agreeing." To justify a discharge for that reason there should be a judicial inquiry into the facts of whether there is probability of the jury agreeing and a judicial determination that there is no such probability. Anything less than that results in the discharge of the defendant. Since the trial is in a court of record, these constitutional and statutory provisions contemplate that a record of the judicial determination of these facts should be made (*State v. Allen,* supra), although it is possible, if the proper judicial inquiry was had and judicial determination made, the record may be completed at a later date. (*State v. Curry,* supra.)

In *State v. White,* 19 Kan. 445, which was a trial on the charge of bigamy, after the jury had been deliberating about fourteen hours, in the absence of the defendant and his counsel the court, being satisfied that the jury could not agree, discharged them and had the record show that the discharge of the jury was granted after it had been made to appear to the court that the jury could not agree upon a verdict. In the opinion it was said:

"The irregularity of the court consisted in taking action in the absence of the prisoner and his counsel, not in the fact that the jury were discharged after it had been made to appear to the court that they could not agree upon a verdict, and after a finding and entry of this fact were duly made a matter of record. The court had a right to discharge the jury after they had been

kept together until it satisfactorily appeared that there was no probability of their agreeing." (Citing the statute and other authorities.) (p. 448.)

In *State v. Rudy*, 9 Kan. App. 69, which was a trial for a mis-demeanor, it was held the jury may be discharged without a verdict "when it is made to appear to the satisfaction of the court that there is no reasonable probability of their agreeing upon a verdict." In the opinion it was said:

"The record satisfactorily shows there was no probability of the jury agreeing; the jury twice reported to the court its inability to agree upon a verdict, and prior to its discharge each juror answered for himself that it was impossible for them to agree upon a verdict. Upon such a showing the court was authorized, in the exercise of its discretion, to discharge the jury." (p. 72.)

In *State v. Hager*, 61 Kan. 504, 59 Pac. 1080, the syllabus reads:

"Where the record of the trial of a criminal case shows that the jury 'were absent some time considering of their verdict,' and upon being returned to the jury box the foreman, in reply to an inquiry by the court stated, in the presence of the remainder of the jury and without dissent by any of them, that there was no probability of their agreeing upon a verdict, and the court thereupon discharged them, 'because they were unable to agree upon a verdict,' *held*, that such record does not show an arbitrary or unreasonable exercise of the court's authority in discharging the jury, but does show facts from which a presumption of a correct exercise of judicial authority arises, and that it will not support a plea of former jeopardy when the defendant is again put upon trial."

In the opinion it was said:

"Authority for the discharge of a jury trying a criminal case, therefore, exists if 'they have been kept together until it satisfactorily appears that there is no probability of their agreeing.' The tribunal primarily intrusted with the duty of determining whether a jury has been kept together until there is no probability of their agreeing is the trial court. The questions whether they have been so kept together and whether there is a probability of their agreeing are judicial questions. As such they cannot be arbitrarily or capriciously determined by the court. The court must be satisfied that the jury in all probability cannot agree to a verdict before it should order their discharge. However, when it does become of that conviction and enters it of record, the correctness of its view and the soundness of its conclusions are not subject to review, unless the record of its action discloses it to be in error. Unless the record discloses hastily formed conclusions, immature judgment, or capricious conduct, the action of the trial judge cannot be reviewed by this or any other court." (p. 508.)

In *State v. Alexander*, 66 Kan. 726, 72 Pac. 227, the pertinent syllabus reads:

"The record of a former trial reads: 'The said jury by order of the court

were brought into open court, and it appearing to the court that the said jury are unable to agree upon a verdict, and that there is no reasonable probability of their being able to agree upon a verdict, they are discharged from further consideration of this case.' This record sufficiently shows a disagreement of the jury, and a plea of former jeopardy based thereon was properly overruled."

In *State v. Curry*, 74 Kan. 624, 87 Pac. 745, there had been two mistrials at previous terms. The record of each of these former trials recites that when the jury returned into court and announced they were unable to agree they were discharged. The syllabus reads:

"A plea of former jeopardy was based upon the failure of the record of a former trial to show affirmatively that the jury were discharged for the reason that the court found they were unable to agree. Before the plea was heard the court made an order correcting the record so as to speak the truth, and as corrected it showed that on the former trial the court inquired of the jury and upon their answers found they could not agree. *Held*, first, that the court possessed ample power to correct its record in accordance with the fact; second, that upon the amended record the plea was properly overruled."

Under the facts of this case as previously set forth, and in the light of the authorities which have been referred to, it was not error for the trial court to overrule the motion to correct the record of the former trial and to deny the plea in bar.

It is contended the court erred in not sustaining defendant's challenge to a certain juror for cause. In his *voir dire* examination he stated that he had been in the court room and heard a part of the case when it was tried before and had formed an opinion which it would take evidence to remove. On being asked: "Is that such a belief upon the merits of the case as might weigh with you in arriving at your verdict?" he answered in the negative. This is said to be the test of competency. (*State v. Henson*, 105 Kan. 581, 185 Pac. 1059.) His further answers tended to show that he could sit as a juror and try the case fairly and impartially from the evidence produced on the trial and in accordance with the instructions of the court. Perhaps trial courts are too slow to excuse for cause a juror who says at any time in his examination that he has an opinion concerning the case which it would take evidence to remove, but his *voir dire* examination is a trial of his qualifications before the court, and ordinarily the ruling of the trial court thereon will not be disturbed where there is evidence to sustain it and it is not clearly erroneous. (*State v. Stewart*, 85 Kan. 404, 116 Pac. 489;

*State v. Molz,* 91 Kan. 901, 139 Pac. 376; *State v. Pratt,* 114 Kan. 660, 220 Pac. 505; *Seals v. Snow,* 123 Kan. 88, 254 Pac. 348.)

There is another reason why this ruling does not constitute error in this case. The juror was excused peremptorily and did not sit in the trial of the case. It is not contended that any juror who was permitted to be·upon the jury in the trial of the case was in any way biased or otherwise disqualified. In other words, the record indicates that the defendant had a fair, impartial jury to try his case. If that be true errors with respect to persons examined as jurors but who did not serve as such become immaterial.

The judgment of the court below is affirmed.

SMITH and THIELE, JJ., dissenting from third paragraph of syllabus and corresponding portion of opinion.