No. 32,703

DEAN BAILEY, *Appellee*, v. FRED McLEOD and ROY McLEOD, doing business as McLEOD BROTHERS, *Appellants.*

(56 P. 2d 460)

Opinion filed April 11, 1936.

A. D. Weiskirch, Jr., of Topeka, for the appellants.

J. T. Pringle, of Burlingame, and A. K. Stavely, of Lyndon, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: Plaintiff sued to recover a commission claimed to be due him under a parol contract with the defendants to purchase pigs for them. Defendants denied the contract and alleged they and plaintiff were partners in the purchasing of pigs, and that the transactions resulted in a loss. These allegations were put in issue by reply. A jury trial resulted in a judgment for plaintiff. Defendants have appealed.

Appellants' principal complaint here is that the trial court overruled their challenge for cause of the juror Olson. His *voir dire* examination disclosed that he was interested in an estate being administered in the probate court of the county, concerning which there was some controversy, and was also a party to an action then pending in the district court in which this action was being tried, and that in both of those matters his attorney was Mr. Stavely, one of the attorneys for plaintiff in this action. In other respects the juror's examination showed no reason to challenge him. As to this matter and to the effect it would have, or might have, upon him as a juror in this case, he was interrogated at length by counsel, and was also interrogated by the court. The court concluded the fact the attorney for plaintiff represented the juror in litigation would have no bearing upon his service as a juror in this case and denied defendants' challenge for cause. The *voir dire* examination of a juror is in the nature of a trial to the court of his qualifications to sit as a juror in the case. So far as the determination of those matters rests upon facts disclosed by the examination and determined by the court, this court will not disturb the trial court's ruling in the absence of a showing that the court abused its discretion. There is no such showing here. Whether a juror under those circumstances would make a competent juror would depend very much upon the person whose qualifications were being inquired into, his intelligence and fairmindedness. These are matters for the trial court to pass upon. There is nothing in the examination of this juror to show that he would be influenced one way or the other by that circumstance. Indeed, his own answers indicated the contrary. The ruling of the court violated no statute governing the question. It was a matter for the court to hear and determine in view of all the facts and circumstances disclosed by the examination. (See *Forbes v. Madden,* 98 Kan. 559, 158 Pac. 850; *State v. Henson,* 105 Kan.

581, 185 Pac. 1059; *State v. Tucker*, 137 Kan. 84, 92, 19 P. 2d 436.) More than that, Olson did not sit as a juror in the trial of this case, defendants having excused him by a peremptory challenge; hence the error, if any, of the court's ruling on the challenge for cause becomes of but little importance, since no complaint is made of the qualifications of any juror who participated in the trial. (*State v. Hooper*, 140 Kan. 481, 502, 37 P. 2d 52.)

On the merits this was largely a fact case. While some material facts were controverted, there is an abundance of evidence to sustain the jury's verdict. It will be necessary, however, to notice a few other points discussed by appellants.

Evidence on behalf of plaintiff tended to show that early in August, 1931, plaintiff made an arrangement with the Producers Livestock Commission Company of Kansas City, through its manager, W. T. Angle, to go to South Dakota and purchase pigs on a commission. A few days thereafter he told Fred McLeod about this arrangement. Fred said that he and his brother wanted some pigs and that he would go to Dakota with plaintiff and buy pigs on his own account. They went together to Mitchell, South Dakota, where for a week they visited farmers and purchased pigs, plaintiff for the commission company at Kansas City, and McLeod for himself. Plaintiff received word from his commission company to purchase no more pigs. McLeod then told plaintiff that he wanted to go home and asked plaintiff to stay there and purchase pigs for defendants, and it was then agreed that plaintiff should buy pigs for defendants and that he should receive a commission therefor of 25 cents per hundredweight; that plaintiff stayed in South Dakota and purchased pigs, which were shipped to defendants, until they had all they needed, and that his commission due thereon was the sum asked in his petition. In the course of the examination of plaintiff he testified to a conversation between himself and W. T. Angle at Kansas City. This was objected to as being hearsay. The objection was overruled. Appellants complain of the ruling. The point is not well taken. It was simply an incident in the story leading up to the relation between the parties to the action. Defendants' liability is not predicated upon that conversation. Another bit of evidence admitted over defendants' objection is complained of. Fred McLeod had testified that the evening before he and plaintiff started for South Dakota they had dinner at the home of his father at Topeka and it was there agreed that they would go to South Dakota and

purchase pigs in partnership. Plaintiff not only denied such an agreement, but denied that he was at the home of defendants' father the evening before they started for South Dakota. He testified that he spent the evening at his own home and from there had a telephone conversation with Fred McLeod. Plaintiff's sister testified that she was at the home of Fred McLeod that evening, that he had a telephone conversation which he said was with plaintiff, and later Fred McLeod told her what the conversation was. She testified to those matters. We regard the evidence as competent.

Appellants complain of a special question submitted to the jury. This was directly on the point as to whether it was agreed between plaintiff and Fred McLeod at the Windham Hotel at Mitchell, South Dakota, on the evening before McLeod returned home that plaintiff should buy pigs for defendants and receive a commission of 25 cents per hundredweight from defendants therefor. The jury answered this in the affirmative. The question was not only proper, but it was especially appropriate for the reason that it went directly to the controverted issue between the parties upon which their right in this lawsuit depends.

Appellants complain that the court instructed the jury concerning the law of implied contract. In one of the instructions the court defined a contract and how it might be entered into, and in that connection spoke of both express and implied contracts. Plaintiff had sued on an express contract. He did not claim any right to recover on an implied contract. What was said by the court did not imply that plaintiff was attempting to recover on an implied contract, but was simply given as a part of an instruction pertaining to contracts generally. More than that, the jury found for plaintiff on an express contract, and in answer to a special question found that the express contract alleged by plaintiff had been made. This demonstrates the jury was not misled or confused by anything said in the court's instructions concerning implied contract.

We find no error in the record. The judgment of the court below is affirmed.