No. 40,727

WILMER LEE STEBENS, *Petitioner,* v. TRACY HAND, Warden of the Kansas State Penitentiary, *Respondent.*

(320 P. 2d 790)

Opinion filed January 25, 1958.

*Wilmer Lee Stebens,* petitioner, was on the brief *pro se.*

*Charles N. Henson, Jr.,* Assistant Attorney General, argued the cause, and *John Anderson, Jr.,* Attorney General, was with him on the brief for respondent.

The opinion of the court was delivered by

SCHROEDER, J.: This is an original proceeding in habeas corpus in which petitioner seeks his release from confinement in the State Penitentiary.

On September 20, 1949, the County Attorney of Finney County, Kansas, filed an information in the district court of Finney County charging that the petitioner inflicted certain mortal wounds upon one John Walter Mooney with his fists and a blunt instrument, the exact nature of which is alleged to have been unknown to the complainant, while perpetrating or attempting to perpetrate a robbery, which acts amounted to first degree murder. On the 27th day of September, 1949, the petitioner was brought to trial on this information. He was represented by Don Shaffer, an attorney of his own selection.

Formal arraignment was waived and a plea of not guilty to the information was entered. The case was tried to a jury of twelve men, which on the 29th day of September, 1949, returned a verdict finding the petitioner guilty of murder in the first degree. The jury fixed a penalty at confinement in the Kansas State Penitentiary at hard labor for life. A motion for a new trial was filed within the time granted by the court on October 4, 1949, and was overruled after hearing on the 14th day of October, 1949. On that date the court sentenced petitioner to confinement in the Kansas State Penitentiary at hard labor for life pursuant to G. S. 1949, 21-403. Subsequent thereto petitioner was delivered into the custody of the warden at the State Penitentiary, and at this date he remains confined in that institution in the custody of the respondent.

The grounds upon which petitioner seeks his release are that— (1) He was denied due process of law by being illegally brought into the State of Kansas without extradition for the purpose of standing trial; (2) no coroner's inquest was conducted to determine the cause of the death for which petitioner was found criminally responsible; and (3) he was in fact tried by a jury of ten men.

With respect to the first ground mentioned, the petitioner contends that he was illegally brought into Kansas from the State of Colorado. He says that the statutory procedure for extradition

was not followed; that there is no record of extradition in the office of the Secretary of State; and that petitioner was not informed of his rights under the law prior to waiver of extradition. He charges that agents of the two states entered into a conspiracy to remove him from Colorado by denying to him rights secured by law. He contends that his rights were further violated because the charge against him was "elevated" to one of first degree murder in the district court of Finney County, Kansas.

At best, petitioner's contention amounts to a charge that he was brought into the State of Kansas from Colorado by fraud and deceit. This court has held that the jurisdiction of a district court to try a person on a charge of having committed a public offense does not depend upon how he came to be in this state. (*Foster v. Hudspeth,* 170 Kan. 338, 224 P. 2d 987; *State v. Wellman,* 102 Kan. 503, 170 Pac. 1052; L. R. A. 1918D 949, Ann. Cas. 1918D 1006.)

There is nothing in the Constitution or laws of the United States which exempts an offender, brought before the courts of a State for an offense against its laws, from trial and punishment, even though brought from another State into the jurisdiction by unlawful violence, or by abuse of legal process. (*Ker v. Illinois,* [1886] 119 U. S. 436, 7 S. Ct. 225, 30 L. Ed. 421; and *Mahon v. Justice,* 127 U. S. 700, 8 S. Ct. 1204, 32 L. Ed. 283.)

In *Pettibone v. Nichols,* 203 U. S. 192, 27 S. Ct. 111, 51 L. Ed. 148, 7 A. & E. Ann. Cas. 1047, the petitioner seeking a writ of habeas corpus charged fraud and connivance between two states in securing his arrest and deportation to a state in which he was charged with a crime, similar to the contention in the instant case. The United States Supreme Court there reviewed the *Ker* and *Mahon* cases quite extensively and held that even if the arrest and deportation of one alleged to be a fugitive from justice may have been effected by fraud and connivance arranged between the executive authorities of the demanding and surrendering states so as to deprive him of any opportunity to apply before deportation to a court in the surrendering state for his discharge, and even if on such application to any court, state or federal, he would have been discharged, he cannot so far as the Constitution or the laws of the United States are concerned—when actually in the demanding state, in the custody of its authorities for trial, and subject to the jurisdiction thereof—be discharged on habeas corpus by the federal court. (*Ex Parte Brown,* [1886] 28 Fed. 653.)

It was held in *Cook v. Hart*, 146 U. S. 183, 192, 13 S. Ct. 40, 36 L. Ed. 934, that the cases of *Ker v. Illinois*, supra, and *Mahon v. Justice*, supra, established these propositions:

". . . 1. That this court will not interfere to relieve persons who have been arrested and taken by violence from the territory of one State to that of another, where they are held under process legally issued from the courts of the latter State. 2. That the question of the applicability of this doctrine to a particular case is as much within the province of a State court, as a question of common law or of the law of nations, as it is of the courts of the United States."

Assuming that the petitioner was arrested in the State of Colorado on a warrant charging an offense other than murder in the first degree, thereby giving him the benefit of any doubt, he is still not entitled to the relief for which he prays. This was the proposition presented to the United States Supreme Court in *Lascelles v. Georgia*, 148 U. S. 537, 13 S. Ct. 687, 37 L. Ed. 549, where it was held that a fugitive from justice who has been surrendered by one State of the Union to another State, upon requisition charging him with the commission of a specific crime, has under the Constitution and laws of the United States no right, privilege or immunity to be exempt from indictment and trial, in the State to which he is returned, for any other or different offense from that designated in the requisition, without first having an opportunity to return to the State from which he was extradited.

In *State v. Wellman*, supra, after the decision of *Lascelles v. Georgia*, supra, this court used language to which it has subsequently adhered. It was there said at pages 506 and 507:

". . . After the supreme court of the United States had held that no federal right would be violated by such a course (*Lascelles v. Georgia*, 148 U. S. 537), the way was still open for this court to refuse to countenance the holding of the accused upon any new charge. The decision rendered, however, was that the defendant might be tried upon other charges than those on which his arrest was made, and thereby the court repudiated the theory that the right of the public to inquire into the guilt of an accused person, and to punish him if he was found to have violated its laws, depends upon the regularity of the method by which his presence in the state was brought about. Whether a state shall surrender a person within its jurisdiction who is accused of having broken the criminal laws of another state, without having been personally present therein, is a matter of its own domestic policy. If, without a statute on the subject, its courts hold such course to be legal, the correctness of the decision could not be a matter of inquiry elsewhere; and if, without a judicial decision, the executive officers assume that such conduct is proper and act upon the assumption, the person surrendered has no just ground of complaint

against the authorities of the state whose laws he has broken—certainly none which ought to entitle him to escape punishment for his offense. . . ."

See, also, *Brandt v. Hudspeth*, 162 Kan. 601, 605, 178 P. 2d 224, and cases accumulated in 165 A. L. R. 948.

The petitioner, represented by counsel of his own selection, waived formal arraignment to the charge of first degree murder, and was in no way prejudiced in his legal rights by the fact that the information charged an offense other than the one upon which the requisition was issued.

If the petitioner voluntarily signed a waiver of extradition proceedings, he cannot be heard to complain that he was brought to the demanding state without such process. (*Rutledge v. Hudspeth*, 169 Kan. 243, 218 P. 2d 241; *Brandt v. Hudspeth*, supra; and *State v. Garrett*, 57 Kan. 132, 45 Pac. 93.)

Complaint that no coroner's inquest was conducted to determine the cause of death for which the petitioner was found criminally responsible is likewise without merit.

Petitioner relies on a certificate of death which indicates under the "Medical Certification" that the condition directly leading to death was: "Injuries—unknown cause." But the certificate of death also discloses the following question and answer: "How did injury occur? During fight with man." Construing the certificate of death as a whole the cause of death was known—injuries inflicted during a fight with a man. Unknown was the nature of the instrumentality used to inflict the injuries. This corresponds with the information upon which the petitioner was tried, wherein it was alleged that the nature of the blunt instrument used to inflict the mortal wounds was unknown.

G. S. 1949, 19-1003, has been construed to mean that the coroner shall hold an inquest upon the dead bodies of such persons only as are supposed to have died by unlawful means where the cause of death is unknown. (*Engling v. Edmondson*, 175 Kan. 883, 267 P. 2d 487.) Here the cause of death was known and no inquest was necessary.

The petitioner's third contention, that he was in fact tried by a jury of ten men, stems from his statement that during the trial of the case it was disclosed that two of the twelve jurors were hard of hearing and upon inquiry by the court were rearranged in the jury box and permitted to sit and hear the case. If, in fact, the two jurors who had difficulty in hearing were unable to hear anything

at all, as petitioner contends, this was a matter which should have been presented for review on appeal and not by a proceeding for writ of habeas corpus. (*State v. Smith,* 74 Kan. 383, 387, 85 Pac. 1020, on rehearing 74 Kan. 387, 89 Pac. 21; *Bailey v. McLeod,* 143 Kan. 638, 56 P. 2d 460; *State v. Smith,* 103 Kan. 148, 174 Pac. 551; and *Critchfield v. Ernzen,* 181 Kan. 284, 310 P. 2d 930.) The petitioner was represented by counsel of his own choosing at the trial. A motion for a new trial was presented and denied following which the petitioner effected an appeal to this court. It was filed on March 15, 1950. The records of this court disclose that no abstract or brief was filed in the case, and the appeal was dismissed on the 4th day of December, 1950.

If there was any merit whatever to the complaint of the petitioner, he should have pursued his appeal in this court. His petition for a writ of habeas corpus was not filed in this court until March 15, 1957. It cannot be considered as an appeal even though this court is inclined to be lenient and extend to the prisoner every justifiable advantage. A proceeding in habeas corpus is not a substitute for an appeal and errors made in the trial court, which are subject to review on appeal to this court, cannot be corrected or reviewed upon a petition for the writ. (*Powers v. Hudspeth,* 161 Kan. 777, 173 P. 2d 251; *Engling v. Edmondson,* supra; *Richardson v. Edmondson,* 179 Kan. 62, 292 P. 2d 705; and *Wilson v. Hand,* 181 Kan. 483, 484, 311 P. 2d 1009.)

In an original proceeding in habeas corpus the burden is on the petitioner to prove the allegations of his petition by a preponderance of the evidence and his unsupported assertions, which were denied by the respondent, are not sufficient to satisfy this burden. The decisions of this court have required a clear and convincing preponderance of the evidence because a judgment of conviction carries with it a presumption of regularity and validity. The rule is well established that the standard of proof necessary to justify the issuance of a writ of habeas corpus is not met by uncorroborated and unsupported statements of the petitioner. Records of courts are not set aside upon the unsupported statements of a defeated litigant. (*Wilson v. Hand,* supra; *Hartman v. Edmondson,* 178 Kan. 164, 283 P. 2d 397; *Hall v. Edmondson,* 177 Kan. 404, 279 P. 2d 290; and *Engling v. Edmondson,* supra.)

A search of the record before us disclosed nothing which would entitle petitioner to his release and the writ is therefore denied.