No. 45,369

Franklin R. Yurk and Charles Brady, *Appellants,* v. Glenn Brunk, Sheriff of Wyandotte County, Kansas, and Frank Menghini, County Attorney of Wyandotte County, Kansas, *Appellees.*

(451 P. 2d 230)

Opinion filed March 8, 1969.

*Donald W. Vasos,* of Kansas City, argued the cause, and was on the brief for the appellants.

*Frank D. Menghini,* County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, and *Nick Tomasic,* Assistant County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: This is a habeas corpus proceeding. The trial court denied relief and the petitioners, Yurk and Brady, have appealed.

The facts, so far as relevant, are not complicated and can be stated briefly. On December 11, 1967, three men held up and robbed a grocery store in Kansas City, Kansas. The following evening, Yurk, Brady and a third man were taken into custody in Kansas City, Missouri, by police officers of that city. On December 13, 1967, a complaint was filed in the Magistrate Court of Wyandotte County, Kansas, charging the three men with the Kansas robbery and a warrant was issued for their arrest. The next day, December 14, 1967, Yurk and Brady executed written waivers of extradition and were turned to Kansas authorities.

A preliminary hearing was held on December 28, 1967, at which petitioners were represented by counsel and evidence was intro-

duced. The petitioners were bound over to district court for trial and thereafter, on January 16, 1968, instituted the present action. After an answer was filed, an evidentiary hearing was held before Judge Claflin and, as previously related, relief was denied.

In essence, the main issue raised on appeal is this: that the district court lacked jurisdiction over the petitioners because they had been threatened and coerced into waiving extradition.

On this point, Yurk and Brady both testified they were told, in effect, by Kansas City, Missouri police officers, that unless they executed waivers of extradition, they would be turned loose, apparently on the way to Magistrate Court, and then would be shot down on the pretext they had attempted to escape. Their testimony, however, was wholly uncorroborated and thus was insufficient to justify the granting of relief by means of habeas corpus. In *Hill v. Hudspeth,* 161 Kan. 376, 168 P. 2d 922, this court said:

"Again and again this court has held that a writ of habeas corpus will not be allowed on the uncorroborated and unsupported statements of the petitioner. (See *Cochran v. Amrine,* 153 Kan. 777, 113 P. 2d 1048, and *Wooner v. Amrine,* 154 Kan. 211, 117 P. 2d 608.) . . ." (p. 379.)

We have consistently adhered to this rule. Among our more recent cases, the inquisitive reader may refer to *Hartman v. Edmondson,* 178 Kan. 164, 166, 283 P. 2d 397; *Stebens v. Hand,* 182 Kan. 304, 309, 320 P. 2d 790; *McGee v. Crouse,* 190 Kan. 615, 617, 376 P. 2d 792; *Williams v. Crouse,* 193 Kan. 526, 530, 394 P. 2d 96.

Moreover, the means by which the presence of an accused has been secured in this state does not affect the jurisdiction of the appropriate district court to try him. This principle has long been established in Kansas and represents the majority view in this country. In the case of *State v. Wellman,* 102 Kan. 503, 508, 170 Pac. 1052, the court said that the jurisdiction of a district court to try a person charged with the commission of an offense does not depend upon how he came to be within this state. In a more recent case, *State v. Wharton,* 194 Kan. 694, 401 P. 2d 906, we held:

"Jurisdiction of the person in a criminal action is not affected by the way it is acquired." (Syl. ¶ 2.)

Among other cases of like import, see *Brandt v. Hudspeth,* 162 Kan. 601, 178 P. 2d 224; *State v. Cook,* 194 Kan. 495, 399 P. 2d 835; *Call v. State,* 195 Kan. 688, 408 P. 2d 668; *Thompson v. State,* 197 Kan. 630, 419 P. 2d 891; and *Williams v. State,* 197 Kan. 708, 421 P. 2d 194.

The appellants refer to an annotation in 165 A. L. R. 947, *et seq.,* wherein it is said that Kansas favors the minority view, *i. e.,* that the right to try an accused is impaired when he has been brought into the state by violence. This somewhat startling revelation is predicated on the early case of *State v. Simmons,* 39 Kan. 262, 18 Pac. 177. However, by 1965 the Simmons case had become so watered down throughout years of refinement and explanation that in *State v. Wharton,* supra, this court took final leave therefrom. In Wharton, wherein the defendant's return to Kansas was said to have been accomplished by forcible means, this court forthrightly applied the majority rule, which actually had been followed ever since the Wellman case in 1918, and then went on to say:

"*State v. Simmons,* supra, relied on by defendant, was a proceedings in contempt and foreign to the facts in the instant case. It has no application, and anything said therein which conflicts with the views herein expressed is disapproved." (p. 696.)

A second point briefed by the petitioners concerns the right to counsel of an accused who is confronted with extradition proceedings. The state of Missouri, it would appear, has adopted provisions of the Uniform Criminal Extradition Act, and the petitioners cite 39 V. A. M. S. § 548.101 in support of their position. This statute substantially provides that no person arrested upon a governor's warrant shall be handed over to the designated agent of a demanding state unless he shall first be taken before a judge of a court of record who shall inform him of the demand made, the crime charged and his right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of the arrest, the judge shall allow a reasonable time to apply for a writ of habeas corpus.

An additional Missouri statute not cited by the appellants, 39 V. A. M. S. § 548.260, further provides, in essence, that a person arrested in that state charged with having committed a crime in another state may waive the issuance of a governor's warrant, and all other procedure incident to extradition, by executing a written waiver in the presence of a judge of a court of record agreeing to return to the demanding state, provided the judge first informs him of his right to the issuance of a governor's warrant and his right to obtain a writ of habeas corpus.

We believe the record establishes full compliance with both Missouri statutes despite assertions by the petitioners that they were not advised of their right to counsel. The waiver signed by

Yurk expressly recites he had been informed he could have counsel, but had declined the same, and that he had been advised of his legal rights under Missouri laws. The same recitations appear in Brady's signed waiver, and the waivers of both men are shown executed before a judge of a court of record. We entertain no doubt that both gentlemen were fully apprised by the magistrate of their legal rights. It is to be presumed that public officers will faithfully perform the duties imposed on them by law. (*Call v. State,* supra; *Lyerla v. Lyerla,* 195 Kan. 259, 403 P. 2d 989; *Robinson v. State*, 198 Kan. 543, 426 P. 2d 95.)

It is intimated, although the point is not briefed, that prejudice resulted to the rights of these petitioners by reason of in-custody interrogation and line-ups conducted by Kansas City, Missouri police officers in the absence of counsel for the accused. The suggestion is without merit. When this petition was filed, and when it was heard, the petitioners were being held, not on Missouri process, but on process issued by Kansas Courts, concerning which no complaint is lodged. Moreover the petitioners had been accorded preliminary examination and had been bound over for and were awaiting trial.

The trial itself, however, had not been held. If we were to assume that incriminating admissions had been obtained from the petitioners by Missouri police officers, or that identifications had been made at the Kansas City jail, even though there is not a shred of evidence to such effect, neither such admissions nor such identifications have been used to petitioners' prejudice at their trials, for their trials had not yet been held. The "fruit of the poison tree" doctrine is simply not applicable to the circumstances of this case. (*State v. Dobney,* 199 Kan. 449, 429 P. 2d 928.)

No error having been shown committed in the court below, the judgment is affirmed.