No. 40,482

WILLIAM F. CRITCHFIELD, *Appellant* v. ROBERT ERNZEN, WARREN McMEINS, WAYNE McMEINS, and CLIFFORD VAN TYLE, a Co-partnership, d/b/a McMeins Bros., *Appellees.*

(310 P. 2d 930)

Opinion filed May 11, 1957.

J. W. *Lowry,* of Atchison, argued the cause, and *Steadman Ball,* and *Wm. E. Stillings,* both of Atchison, were with him on the briefs for the appellant.

*Willard L. Phillips,* of Kansas City, argued the cause, and *John E. Buehler,* of Atchison, and *Thomas M. Van Cleave, Jr.,* of Kansas City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: This was an action to recover damages to person and property sustained by the plaintiff in a collision between two

motor vehicles on a public highway. The plaintiff appeals from an adverse judgment.

The pleadings are not involved and need only be detailed for the purpose of defining the issues. For present purposes it suffices to say the petition charges divers acts of negligence of the defendant Robert Ernzen, while driving a milk truck in the course of his duties as an employee of the defendants, Warren McMeins, Wayne Mc-Meins and Clifford Van Tyle, a co-partnership, d/b/a McMeins Bros., in overtaking and colliding with plaintiff's farm truck on a public highway were the proximate cause of the damages sustained by him as the result of the collision of the two vehicles; that the answer, after denying material allegations of the petition, states all injuries and property damages sustained by plaintiff in the collision resulted from his own acts of negligence; and that the reply denies allegations of the answer inconsistent with the petition and, in sub-stance, alleges the defendant truck driver, by the exercise of ordinary care, could have seen plaintiff in a position of peril from which he could not extricate himself in time to have avoided the collision.

On issues thus joined the cause came on for trial by a jury which, after introduction of evidence by the parties, was given written in-structions and ultimately returned a general verdict for the plaintiff along with its answers to nine special questions submitted by the court.

Following action as above indicated plaintiff, who was dissatisfied with the amount of the verdict, filed a motion for a new trial and a motion to set aside answers made by the jury to three special questions relating to negligence on his part. When these motions were overruled defendants filed a motion for judgment upon the special findings of the jury notwithstanding the general verdict. This motion was sustained and the trial court then set aside the general verdict and rendered judgment in favor of defendants and against plaintiff upon the special findings for costs of the action. Thereupon plaintiff gave notice he was appealing from the rulings on all post-trial motions and the judgment.

Since it is conceded Ernzen was the employee of all other de-fendants and engaged in the performance of his duties as such em-ployee at the time of the accident we shall throughout the course of this opinion, in the interest of brevity, make no further mention of the employer defendants and refer to defendant Ernzen as ap-pellee and the plaintiff as the appellant.

Strange as it may seem, this is one case where even the counsel for the parties involved concede there is little dispute in the testimony with respect to pertinent and material facts of record. Even so, in order to properly understand the issues, it will be necessary to briefly outline the evidence on which the rights of the parties depend. This will be done by stating the facts about which there is no controversy and by giving our version of the evidence respecting the one or two points about which there is any dispute.

At about 10:30 a. m. on the morning of October 15, 1954, appellant was driving his one-ton farm truck east on U. S. Highway 73 just east of Shannon, Kansas. The highway at this point was blacktop, eighteen to twenty feet wide with shoulders forty to fifty feet from bank to bank. Approaching the place where the accident occurred from the west the road comes up over a hill, the top of which is some 300 to 315 feet west of a farm driveway into which appellant was attempting to turn, when the collision occurred. At the top of this hill is a gravel road going south. As the appellant, accompanied by a passenger named Murray who was riding in the right front seat, approached the scene of the collision he was driving approximately thirty miles per hour. His truck was just under eight feet wide, between nine and ten feet high, with a red stockrack and with cab painted yellow. To the east from the top of the hill the slope was downward and clear for a distance of approximately one-half mile. As appellant approached the top of the hill he noticed a truck some quarter mile behind him, traveling in the same direction. As he reached the top of the hill he rolled down the left window of his truck and put out his hand as a signal of his intention of turning left to the north at a farm driveway, located some 300 feet to the east down the road, and continued signaling until just before attempting to turn his truck into such driveway. At or about the same time he put on his brakes and reduced his speed to perhaps twenty miles per hour. Appellee in the meantime had topped the hill and appellant saw his vehicle at the top of such hill when appellant was about 150 feet down the hill, i. e., one-half way between the top of the hill and the place of his intended turn. Thereafter appellant made no attempt to look to the rear again and was oblivious of appellee and the oncoming milk truck until the moment he prepared to turn into the driveway. Just as appellant started such turn to the left or north he became aware of the roar of the motor of appellee's milk truck which was then in the process of passing him. At that time the front end of appellant's

truck was north of the center line of the highway. He immediately attempted to turn back into the right-hand lane of traffic but the heavily loaded milk truck struck his farm truck at its left front door with the result the accident occurred, both trucks were severely damaged and appellant was seriously injured.

The submitted special questions and the answers made thereto by the jury complement the foregoing factual statement and are so highly important to the appellant issues involved they must be quoted at length. They read:

1. "Q. Did the plaintiff give an arm signal of his intention to turn left into the private drive continuously during the last 100 feet traveled by his truck before turning toward the private drive? A. Yes.

2. "Q. Just before the plaintiff started to make his turn into the left lane to enter a private drive, was there anything to obstruct his vision to the west along the highway upon which the defendant's truck was approaching? A. No.

3. "Q. After the plaintiff looked in his rear vision mirror and saw the defendant's truck about 150 feet away and approaching plaintiff's car, did the plaintiff, immediately before he actually commenced to make his turn, again look to see whether any vehicle was coming behind him from the west? A. No.

4. "Q. At the time the plaintiff commenced to turn his truck to the left so that it crossed the center line of the highway, was the defendant's truck so close thereto that the turn could not be made with reasonable safety? A. Yes.

5. "Q. Was the defendant in the process of passing the plaintiff's truck when the plaintiff made his turn to the left with the intention of entering the private drive? A. Yes.

6. "Q. If you find a verdict in favor of the plaintiff, state each and every act of negligence of which you find the defendant, Ernzen guilty. A. His failure to see hand signal and stop light.

7. "Q. Was the plaintiff guilty of any act of negligence which directly contributed to the collision? A. Yes.

8. "Q. Was the collision the result of an unavoidable accident as defined by the Court's instruction? A. No.

9. "Q. Did the plaintiff turn his truck to the left from a direct course on the highway at a time when such movement could not be made with reasonable safety? A. Yes."

The first and, we may add, the principal question advanced by appellant is that special questions 4 and 9 should not have been submitted to the jury. In passing we note there is some quibble between the parties as to whether objection was made by appellant to these questions prior to their submission. Although the record is not clear on the point we resolve that controversy in his favor and proceed accordingly.

In approaching this question it must be remembered that under the pleadings one of the issues in this case was whether appellant was guilty of negligence because he had turned his vehicle from a

direct course upon the highway without first determining whether such movement could be made with reasonable safety; that the appellee's demurrer to appellant's evidence, based on grounds that evidence showed he had done so and was therefore guilty of negligence precluding his recovery, had been overruled by the trial court and such issue had been permitted to go to the jury as a question of fact; and that by its Instruction No. 13, which was unobjected to and therefore became the law of the case, the court instructed the jury on the pertinent statute involved, *i. e.*, G. S. 1949, 8-547, as follows:

"(*a*) No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety, and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement, or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement. (*b*) A signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning . . ."

Appellant's first contention on the subject now under consideration is that both questions asked the same thing only in different language. From our analysis of the questions we do not think their language is so duplicitous that it can be held the court abused its discretion in giving them. Neither do we believe, as appellant contends, that the answer called for by each question is a legal conclusion. Nor do we agree with contentions to the effect such questions are complex in nature and therefore objectionable. Indeed our view is both questions properly sought the jury's decision, on what the court had previously determined was a factual question under the evidence, as to whether the express terms of the provisions of G. S. 1949, 8-547, requiring that no person shall turn a vehicle from a direct course upon the highway unless and until such movement can be made with reasonable safety, were being violated by appellant at the time of the accident.

Appellant frankly concedes the next question raised, *i. e.*, that the court should have sustained his motion to set aside the answers to special questions, is predicated upon his theory special questions 4 and 9 should not have been submitted and therefore are not to be considered as a part of the special findings. Having heretofore determined that issue contrary to his position this contention requires no further consideration.

The next claims of error advanced by appellant are based on the

premise the trial court erred in sustaining the appellee's motion for judgment on the special findings notwithstanding the general verdict. First it is urged the answers to special questions do not compel a finding of contributory negligence. In the face of findings 4 and 9 this argument cannot be upheld. The rule of this jurisdiction, so well-established as to require no citation of the authorities supporting it, is that violation of a statute—in this case G. S. 1949, 8-547 (*a*) —which is found by the triers of fact to be one of the direct and proximate causes of an accident constitutes contributory negligence and bars recovery in an action such as is here involved. Next, impliedly conceding if not actually admitting that the findings in question are consistent with each other, and we may add full and complete, it is argued it is impossible to reconcile such findings with the general verdict, hence the court should have granted appellant a new trial instead of rendering judgment on the findings notwithstanding the verdict. Our decisions are to the contrary. See *Ferguson v. Kansas City Public Service Co.*, 159 Kan. 520, 156 P. 2d 869, where it is held:

"In an action for damages for personal injuries, the jury returned a verdict for plaintiff and answered special questions, clearly finding plaintiff guilty of negligence which caused or contributed to his injury. *Held*, under our statute ( G. S. 1935, 60-2918 ) it is the duty of the court to sustain defendant's motion for judgment in its favor on the answers to the special questions notwithstanding the general verdict; and where the court in effect approved the answers to the special questions it had no authority to grant a new trial upon the ground a conflict existed between the general verdict for plaintiff, which had inherent in it a finding that plaintiff was not guilty of contributory negligence, and the answers to the special questions clearly showing his negligence." ( Syl. ¶ 6.)

For more recent decisions of like import see *Fralick v. Kansas City Public Ser. Co.*, 168 Kan. 134, 211 P. 2d 443; *Metzinger v. Subera*, 175 Kan. 542, 266 P. 2d 287; *Franklin v. Kansas City Public Service Co.*, 175 Kan. 626, 265 P. 2d 1031.

We turn now to questions raised by appellant in support of his position the trial court erred in overruling his motion for a new trial.

On *voir dire* examination two prospective jurors admitted one of appellant's counsel was involved in litigation adverse to their respective interests. Each such juror was challenged for cause. These challenges were overruled on the ground neither juror had admitted prejudice against the appellant. Thereafter both such jurors were excused on peremptory challenges and subsequently no ob-

jection was made to the qualifications of any of the jurors who participated in the trial. In the face of what has just been related we are unable to agree with appellant's contention the trial court abused its discretion or committed reversible error in refusing to disqualify the jurors in question.

See *Parnell v. Security Elevator Co.*, 174 Kan. 643, 258 P. 2d 288, where it is held:

"Whether a prospective juror is qualified is addressed to the sound discretion of the trial court on the juror's *voir dire*, and the trial court's determination will not be disturbed unless it appears it abused its discretion." (Syl. ¶ 1.)

And *Bailey v. McLeod*, 143 Kan. 638, 56 P. 2d 460, which reads:

". . . More than that, Olson did not sit as a juror in the trial of this case, defendants having excused him by a peremptory challenge; hence the error, if any, of the court's ruling on the challenge for cause becomes of but little importance, since no complaint is made of the qualifications of any juror who participated in the trial. (*State v. Hooper*, 140 Kan. 481, 502, 37 P. 2d 52.)" (p. 640.)

See, also, *State v. Springer*, 172 Kan. 239, 239 P. 2d 944, where it is said:

"The constitutional guaranty is that an accused shall be tried by an impartial jury. The matter of peremptory challenges is merely statutory machinery for carrying out and securing the constitutional guaranty. Error in overruling a challenge to a juror is not ground for reversal unless the accused was prejudiced thereby. The real question is: Was the jury which tried defendant composed of impartial members? In the absence of any objection on the part of defendant to any member as it was finally drawn to try him we cannot say it was not impartial." (p. 245.)

Complaint is made of the trial court's refusal to give certain requested instructions. Nothing would be gained by discussion of arguments advanced in support of this complaint. It suffices to say we find nothing in the record as presented which makes it affirmatively appear the trial court committed error in refusing to give such requested instructions.

Although appellant concedes that no objections were made to an instruction given by the court covering the subject of a quotient verdict he now contends that instruction was so clearly erroneous in law that he was not required to object to it in order to rely on it as grounds for the granting of a new trial. Assuming, as appellant contends and without deciding the question, there was something wrong with this instruction the fact it was given affords no sound ground for reversal of the judgment. By its answers to the special questions, to which we have heretofore referred, the jury made it

impossible for appellant to recover judgment because of his own contributory negligence. Under our statute (G. S. 1949, 60-3317) error complained of which does not prejudice the substantial rights of a party affords no sound basis for reversal of a judgment and must be disregarded. This rule, it is to be noted, is applicable where errors or defects in instructions become nonprejudicial by reason of special findings. See, e. g., *Sternbock v. Consolidated Gas Utilities Corp.*, 151 Kan. 81, 91, 98 P. 2d 162; *Simeon v. Schroeder*, 170 Kan. 471, 474, 227 P. 2d 153.

Finding nothing in the record or in the errors assigned which either requires, warrants or permits a reversal of the judgment it must be and is affirmed.

It is so ordered.