No. 40,639

Roy Z. Johnson, Edna Johnson and Helen M. Bacon, *Appellees*, v. Colorado Interstate Gas Company, *Appellant*.

(322 P. 2d 781)

Opinion filed March 8, 1958.

*Shelley Graybill,* of Elkhart, argued the cause and was on the briefs for the appellant.

*A. E. Kramer,* of Hugoton, argued the cause, and *Bernard E. Nordling,* of Hugoton, was with him on the briefs for the appellees.

The opinion of the court was delivered by

Robb, J.: This is a proceeding in eminent domain to condemn a right of way for a high pressure gas pipe line. The landowners had appealed to the district court from the award of the appraisers and this appeal is by the condemner from an order overruling a motion for new trial in the court below.

Two companion cases by the same condemner involving the same pipe line have heretofore been before this court. (*Smith v. Colorado Interstate Gas Co.,* 179 Kan. 177, 294 P. 2d 226; *Denman v. Colorado Interstate Gas Co.,* 179 Kan. 180, 294 P. 2d 207.)

We shall refer to appellees as the landowners and to appellant as the condemner. The pleadings are not involved and only the salient parts of the evidence and the trial proceedings will be summarized. The sole specification of error is the trial court's order overruling condemner's motion for new trial.

The right of way sought by condemner running diagonally across the land in question was a strip 163.09 rods long and 50 feet wide containing 3.08 acres.

Tom Milburn, a prospective juror, indicated in his *voir dire* examination that the Cities Service pipe line crossed his land; that their relationship had been satisfactory; he knew of a pending companion case but had not heard it discussed; he had heard discussions on pipe-line easement values from time to time but had no set opinion—just a general idea; he thought he could ignore his own opinions and be guided by the evidence and the court's instructions; he had been a member of and had received bulletins

of the Royalty Owners Association, some of which he had read; the bulletin contents might have influence on him but he did not think they would have any bearing in this case or on his verdict.

The first question raised by the motion for new trial involves this juror because while inspecting the premises, when sent by the court to do so, he stated to the other jurors, contrary to the court's admonition, that *pipe lines never made him a dime* and *the more you can get out of them the better he would like it.* Later, during the jury's deliberations, he further stated that he was "against pipelines"; that they were "paying $2.00 per rod per year in Texas and Oklahoma"; that he knew what pipe-line companies made from lines like this one and there was no reason why landowners should not be well paid. The above matters were shown by affidavits of two other jurors at the hearing on the motion for new trial.

The landowners' testimony showed that the four foot wide strip where the line was laid had ridges eighteen inches high and sunken places a foot deep with light-colored gyp on the surface which would cause extra work in cultivating the land. The land was a good grade of top soil and was very level. The quarter of land before the taking was worth $90.00 to $100.00 an acre, or a total of $14,400 to $16,000, according to one witness. It was worth $110 per acre according to another witness, and a third testified the taking of the right of way decreased the value of the surface of the entire quarter $10.00 an acre, or a total of $1,600.

Special questions were asked and answered by the jury as follows:

"1. What was the fair market value of the surface of Plaintiffs' quarter section of land immediately before the taking of the pipeline right of way by Defendant? A. $14,000.00.

"2. What was the fair market value of the surface of Plaintiffs' quarter section of land immediately after Defendant took the pipeline easement and subject to it? A. $13,000.00."

The jury returned the following verdict:

"Value of easement of right of way acquired............... $652.36
"Damage to remaining 156-plus acres..................... $347.64

"Total amount of damages................................ $1,000.00"

The trial court entered judgment in the landowners' behalf on December 11, 1956, in the sum of $1,000.

Condemner filed its motion for new trial based on the following grounds:

1. Misconduct of jury.

2. Erroneous rulings and instructions of the court.
3. The verdict was given under the influence of passion and prejudice.
4. The verdict is in whole or in part contrary to the evidence.
5. The special verdict is in conflict and inconsistent with the jury's answers to special questions submitted, is in conflict and inconsistent with the general verdict and cannot form the basis for a judgment herein.

Upon the hearing of the above motion, the afore-mentioned affidavits of the two jurors were offered to show the misconduct of juror Tom Milburn both in the jury room and while the jury was viewing the land in question. The trial court in overruling the motion for new trial stated:

"Whereupon plaintiffs . . . [landowners] object to the consideration of said affidavits by the court and further request leave to file counter affidavits regarding any alleged misconduct of the juryman Tom Milburn, in the event the Court found that the statements contained in the Niles and Dunn affidavits were pertinent to the issue."

It is from this order overruling the condemner's motion for new trial that the present appeal has been brought to this court.

Condemner contends the trial court erred in not considering the affidavits of the two jurors but treating them as incompetent, irrelevant or immaterial by reason of the quoted portion set out in its order overruling the motion for new trial.

The first question, and a very serious one, is that of the misconduct of Tom Milburn in his answers on *voir dire* examination and subsequent statements he made while viewing the property and during deliberations in the jury room. Such conduct on the part of a juror is highly censorable and at first blush it would seem to be sufficient to justify a reversal, but we must further consider whether the judgment should be disturbed when tested by the former decisions of this court applicable to the circumstances of this case.

Apparently there was no complaint on the part of condemner as to Milburn's answers to questions on *voir dire* examination and we will not linger on this point except to say that the condemner cannot claim it was deceived or that the answers were false or deceptive and resulted in counsel for condemner being deprived of further opportunity to determine whether Milburn was impartial, as was the case in *Kerby v. Hiesterman,* 162 Kan. 490, 178 P. 2d 194. Here the juror was not challenged for cause or on a peremptory challenge as was the case in *Critchfield v. Ernzen,* 181 Kan. 284, 289, 310 P. 2d 930, but he was passed by condemner and allowed to serve on the trial of the case. We merely mention these challenges as preliminary for what follows on a showing of prejudice.

The well-established rule regarding misconduct of a juror was clearly expressed in *Bohannon v. Peoples Taxicab Co.*, 145 Kan. 86, 64 P. 2d 1,

"A jury should confine itself closely to the evidence submitted, but because one, two or three jurors may make remarks as to matters outside the testimony does not vitiate the verdict unless it be affirmatively shown the remarks prejudicially affected the verdict." (p. 88.)

The rule was again stated in *Pulkrabek v. Lampe*, 179 Kan. 204, 207, 293 P. 2d 998, where the jury obtained a dictionary from the sheriff's office to ascertain the meaning of the word *proximate*. That opinion fully and clearly discussed misconduct of jurors in criminal and civil cases as well as the difference in the opinions of this court before and after 1909 when the civil code was revised. The pertinent provisions of G. S. 1949, 60-760, 60-3001, and 60-3317 were set forth therein and we will not cover them again. The circumstances existing in the Pulkrabek case impressed this court as constituting improper and reprehensible misconduct on the part of the bailiff for procuring the dictionary and the jury for referring to it. However, there, as here, the court must determine whether it affirmatively appears that the substantial rights of the complaining party have been prejudiced before the verdict is vitiated so as to afford a ground requiring a new trial.

When the test just discussed is applied to the misconduct of Milburn while viewing the premises and during the jury's deliberations, there is no affirmative showing that such misconduct prejudiced the substantial rights of the condemner. Neither of the affidavits mentions anything about the effect of Milburn's statements on the jury or that it acted upon them. They contain only his statements and one affidavit is quite vague as to what those statements were. We cannot conclude that the verdict was vitiated or that grounds for granting a new trial were present.

It is next contended by condemner that a new trial should have been granted because the jury, by its answers to special questions, awarded two and one-half times more damages for the acreage in the right of way acquired than it found to be the value per acre of the entire quarter section immediately prior to the taking, which was more than the evidence showed the land to be worth. These same special questions were approved as proper in *Denman v. Colorado Interstate Gas Co.*, 179 Kan. 180, 294 P. 2d 207. There is no variance between the total amount of the general verdict ($1,000) and the difference in the value of the surface of the quarter section

of land before and after the taking of the right of way ($1,000), as reflected by the answers to the special questions. Since both amounts were $1,000 we cannot say there was any inconsistency which would have justified setting aside the verdict, reversing the judgment rendered thereon, and granting a new trial. (G. S. 1949, 60-2918.)

Regarding the amounts added together to arrive at the total amount of the general verdict, the condemner argues the jury either increased the damage to the right of way to cover damage to the residue and then made an additional award of the same damage to the residue or it completely failed to heed the trial court's instructions. The landowners offer no explanation except that if there is anything wrong with the general verdict then the answers to the special questions will control and the same result will be reached. We are unable to ascertain how the jury arrived at the amounts it added together in its verdict. A rule of law applied in many instances of this kind, which on some occasions may seem harsh, has been followed through the years and, considering the over-all picture, has proved to be worthy. The rule was last stated in *Taylor v. State Highway Commission*, 182 Kan. 397, 320 P. 2d 832, as follows:

"A general verdict will not be disturbed because a court cannot definitely ascertain the precise method by which a jury arrived at the amount of a verdict when that amount is reasonably within the range of the evidence." (Syl. 5.)

This brings us to condemner's next contention that the evidence did not support the amount of the verdict. The amount of the verdict, as heretofore set out, was well within the evidence and, in addition, the jury was taken out to view the premises. As we stated in the Taylor case, *supra*, the jury could consider any or all of the evidence along with and in addition to its view of the premises. While a jury may so consider the evidence, there is also the rule that it is not bound by any particular part of it as was stated, in substance, in *Denman v. Colorado Interstate Gas Co.*, supra, p. 183. We cannot follow condemner's contention there was no evidence to support the amount of the verdict.

The next point relates to restriction of condemner's cross-examination of a tenant on the farm but the record shows, and condemner admits, that the witness was not testifying as an expert regarding his opinion, as such, of the value of the land. Thus a serious question remains as to whether there was any restriction of cross-exami-

nation by the trial court. If there was such restriction, it was a technical error and irregularity which did not affirmatively appear to have prejudicially affected the substantial rights of the condemner (G. S. 1949, 60-3317) and we conclude the grounds are insufficient to reverse the judgment and grant a new trial.

The final question involves a portion of one of the instructions which might tend to allow the jury to speculate, but when we consider the entire instruction and consider it, in turn, with all other instructions, we cannot agree with condemner's argument that the part of the instruction complained of created prejudice because of the part attacked. This is especially true when we apply the rule as to prejudice stated above since this, too, comes under the classification of a technical error and irregularity.

Judgment affirmed.

FATZER, J. (dissenting): In my judgment the remarks of Juror Milburn were prejudicial and I would grant the appellant a new trial.