No. 40,993

Betty (McFarlin) Logwood and W. F. Logwood, *Appellants,* v.
Larry Francis Martens, *Appellee.*

(331 P. 2d 553)

Opinion filed November 8, 1958.

*Marion C. Miller,* of Kansas City, and *Moss H. Silverforb,* of Kansas City,
Mo., argued the cause, and *Edw. A. Benson, Jr.,* of Kansas City, was with them
on the briefs for the appellants.

*Willard L. Phillips,* of Kansas City, argued the cause, and *Thomas M. Van
Cleave, Patrick B. McAnany, Thomas M. Van Cleave, Jr.,* and *James J. Ly-
saught,* all of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Robb, J.: This is an appeal in a damage action from an order of
the trial court approving the verdict and entering judgment thereon
for the defendant, overruling plaintiffs' motion for new trial, and
overruling plaintiffs' motion to set aside answers to special questions.

The only errors claimed by the plaintiffs hinge on the conduct
of certain jurors. Briefly summarized, the facts are that on Febru-
ary 9, 1955, at about 11:20 p. m., plaintiff Betty Logwood received
personal injuries as the result of a collision at the intersection of
Thirty-fourth street and Gibbs Road in Wyandotte county, Kansas.
Betty was driving north on Thirty-fourth street and made a lefthand
turn in the intersection in order to proceed west on Gibbs Road.
Defendant was driving south on Thirty-fourth street and a collision
occurred. The instant action was thereafter commenced.

During the trial no record was made of the *voir dire* examination
but each party exhausted its three respective peremptory chal-
lenges and thus the panel of eighteen veniremen was reduced to
the twelve who tried the case. Among these twelve jurors were

Herbert Ruby and W. A. Hahn. Since no record was available, affidavits were introduced in the hearing on the posttrial motions, mentioned above, which affidavits show that on *voir dire* examination conducted by Marion C. Miller, one of the plaintiffs' attorneys, Betty Logwood and Mr. Phillips, one of the defense attorneys, were pointed out and introduced to the jurors who were requested to respond if their answers to certain questions were affirmative, or their failure to respond would be taken as a negative answer. Among other questions were those inquiring whether any members of the panel knew or were acquainted with any of the parties, including the plaintiff, and whether any members of the panel knew or were acquainted with any of the attorneys appearing and representing the defendant, including Mr. Phillips, and whether any of the panel knew of any reason or circumstances why he or she could not sit as a fair and impartial juror during the case and render a fair and just verdict. Neither Mr. Ruby nor Mr. Hahn made any response to the above questions which failure to respond indicated negative answers to the questions.

The same result was reached in regard to Mr. Phillips' questions as to whether any juror knew Betty or any member of her family or anything that would disqualify him.

The affidavits of the attorneys, the plaintiff, jurors Ruby and Hahn and the record show the following facts, which have been summarized:

After Betty testified that she had lived in Ponca City, Oklahoma, juror Hahn realized that she was the daughter of a fellow employee of the Marland Refining Company in Ponca City. He had had a speaking acquaintance with Betty's father but he had not associated with him socially. All this had occurred twenty years before and did not affect Hahn's decision in the case. Hahn told Betty and her attorneys after the trial that he had lived in Ponca City, had known people there, and had worked with Betty's father whom he remembered although he said her father might not remember him. Mr. Hahn had not worked in the same department with Betty's father. He had not realized all this until she testified about living in Ponca City. Hahn realized that perhaps he should have made disclosure of this knowledge during the trial before deliberation, or he should have hung the jury. During the jury's deliberations Hahn had mentioned to one of the other jurors that he had known Betty and her family when they lived in Ponca City

but he had also stated that it was not until Betty testified that he realized he knew her family. Hahn also confided to Betty's attorneys that during the jury's deliberations Mr. Ruby told him that he had attended grade school with Mr. Phillips, defendant's attorney, and he was personally acquainted with him.

The affidavits further reflect that at the outset of the jury's deliberations some of the jurors were in a hurry to finish and one juror, Mr. Knight, stated that he had made up his mind and that a verdict should forthwith be entered for defendant. During the process of the trial, though not at the beginning, Ruby noticed characteristics about Mr. Phillips, one of the defense attorneys, which reminded him of a schoolmate who had attended grade school in Kansas City, Kansas, about forty years before. He discussed this with Mrs. Ruby during the first evening recess and she stated undoubtedly it was the same Phillips. They also determined that eleven years previous Phillips' law firm had represented the Rubys in matters pertaining to the estate of Ruby's foster mother but Ruby had never been in the office of Phillips' law firm. Ruby was still not sure this Phillips was the same as the one who had been his schoolmate until he had a conversation with Phillips after rendition of the verdict. He had not seen Phillips since they had been in grade school together during 1916 or 1917. None of this information had had any effect whatsoever on Ruby's verdict. He and Phillips are about the same age and had been confirmed in St. Rose of Lima Church in 1916 on the same day and in the same class. Ruby was the juror who primarily discussed the case in the jury room. He had more to say than the foreman or the other members even though two or three others talked. The remaining jurors were silent most of the time and just followed along.

The usual oaths were administered to the jury. They were:

"You and each of you do solemnly swear that you will true answers make to such questions as may be put to you by court or counsel touching your qualifications to serve as a juror in the cause about to be tried, So Help You God."

"You and each of you do solemnly swear that you will well and truly try the matters and things submitted to you in the cause now on trial, and a true verdict render according to law and evidence, So Help You God."

The verdict of the jury was for the defendant and against both plaintiffs. Special questions were answered as follows:

"1. At what rate of speed in miles per hour was the plaintiff Betty McFarlin's automobile traveling as it entered the intersection? A. 10-15 m. p. h.

"2. When Betty McFarlin's automobile was 50 feet south of the south edge of Gibbs Road, how far north of the south edge of Gibbs Road was Larry Martens' automobile? A. 70 feet.

"3. State where the collision occurred with reference to where the prolongation of the centerline of Gibbs Road and the prolongation of the centerline of 34th Street intersect? A. Southwest quarter.

"4. Was the front end of Betty McFarlin's car north or south of the south edge of Gibbs Road when she started to make her left turn? A. South.

"5. (a) If you answer Question No. 4 'North', then state how many feet north of the south edge of Gibbs Road was the front end of Betty McFarlin's car at the time she started to make the turn? A.

"(b) If you answer Question No. 4 'south', then state how many feet south of the south edge of Gibbs Road was the front end of Betty McFarlin's car when she started to make the turn? A. 6 feet.

"6. Where with reference to the south edge of Gibbs Road was the front end of Larry Martens' automobile when the plaintiff started to make her left-hand turn? A. 36 feet north of the south edge of Gibbs Road.

"7. When Betty McFarlin started to make her lefthand turn, at what rate of speed in miles per hour was Larry Martens' automobile traveling? A. 30 m. p. h.

"8. What is the distance in feet between the north and south lines of Gibbs Road as extended into 34th Street. A. 20 feet.

"9. Traveling at the rate of speed found by you in answering question No. 7, in what distance could Larry Martens' automobile have been stopped under the conditions then existing? A. 75 feet.

"10. If you find a verdict in favor of the plaintiffs, then state each and every act of negligence of which you find Larry Martens guilty. A. None.

"11. Do you find that the plaintiff Betty McFarlin was guilty of any act of negligence which directly contributed to the collision. A. Yes.

"12. If you answer question No. 11 'Yes', then state each and every act of negligence of which you find her guilty? A. Failing to yield the right of way, improper turn constituting a hazard.

"13. Do you find the collision between the two automobiles was a 'mere accident', as explained in the court's instructions? A. No."

Posttrial motions for new trial and to strike and set aside the answers to special questions submitted to the jury were filed. Upon hearing the motion for new trial all the affidavits and records above mentioned were submitted to the trial court and in overruling them the trial court said:

"The court has carefully read the briefs submitted by counsel and the affidavits filed by both sides and has carefully studied the Kerby case to determine whether that case is controlling in the case at bar. The court is convinced that the facts and circumstances set out in the Kerby case are quite dissimilar to those disclosed in the affidavits filed in the present case, and for that reason is convinced that that case is not controlling here. The court is unwilling to find, from the affidavits filed herein, that any of the jurors in this

case on *voir dire* examination gave a false answer concerning his qualifications to serve as a juror. The court without hesitation holds that under all the facts and circumstances disclosed by the affidavits a proper tribunal was established as a jury, which tried the issues in this case and rendered a verdict and made answers to special questions based upon clear, convincing and satisfactory evidence as shown by the record.

"In passing, the court states that the rule stated in the Kerby case on Page 497, which reads as follows: 'When the right of challenge is lost or impaired, the statutory conditions and terms for setting up an authorized jury are not met', is the rule recognized by this court in passing upon this motion, but, as stated above, the court is convinced after reading all of the affidavits on file and considering all the facts and circumstances disclosed by those affidavits, that the statutory conditions and terms for setting up an authorized jury were met in the present case."

The trial court then proceeded to approve the verdict and to enter judgment. Hence we have this appeal wherein plaintiffs complain of error because of the overruling of their posttrial motions when prejudicial matters were concealed on *voir dire* examination and throughout the trial, and because of misconduct of the jury which was unknown to plaintiffs until after trial and resulted in an adverse verdict and answers to special questions. Plaintiffs further complain of error in entering judgment where an insufficient and improper tribunal existed because of concealment, and other misconduct of the jury not known to plaintiffs until after the trial which resulted in a verdict adverse to plaintiffs.

To avoid repetition we have not herein set out verbatim the affidavits, counter-affidavits, or other documentary evidence included in the record, but the record makes it clear that plaintiffs' real complaint centers around the conduct of Hahn and Ruby as jurors.

The trial court's instructions to the jury were not abstracted nor does the record reflect any objection to them and we must therefore assume the court properly instructed the jury as to what it could and could not consider in arriving at its verdict. While the argument is made that Hahn and Ruby violated their oaths, there is no contention made that they also ignored the instructions of the court. However, we shall examine the record further to determine whether these jurors actually did violate their oaths and were guilty of such misconduct as to vitiate the verdict of the jury thereby necessitating the granting of a new trial.

It may be well to note in passing that were we to say a juror is disqualified because he knows or is acquainted with one of the

parties or one of the attorneys in a trial, it would be practically impossible to have jury trials in many of the judicial districts of our state. Attorneys who practice in metropolitan areas have a much better opportunity to secure jurors who know neither the parties nor the attorneys than do those practicing in rural districts.

The general rule applicable in this case as stated and applied in *Kerby v. Hiesterman*, 162 Kan. 490, 178 P. 2d 194, is,

"When a prospective juror, on *voir dire* examination, gives a false or deceptive answer to a question pertaining to his qualifications with result that counsel is deprived of further opportunity to determine whether the juror is impartial, and the juror is accepted, a party deceived thereby is entitled to a new trial even if the juror's possible prejudice is not shown to have caused an unjust verdict." (Syl. ¶ 3.)

As the trial court stated in ruling on plaintiffs' motion for new trial in the Kerby case, the affidavits showed that at the time of trial the attorney for the plaintiff was personally representing the foreman of the jury, as landlord, in a forcible detainer action which action was not concluded until one day after the Kerby trial had commenced. The trial court in our present case concluded the facts and circumstances of the Kerby case were quite dissimilar to those now being considered. There the juror knew his answer to a question in connection with his *voir dire* examination was false *at the time* he made it while in our case the affidavits distinctly show that at the time the questions were asked, the jurors did not realize that they knew one of the parties or attorney Phillips until the evidence and case filled in the identifying facts that plaintiff had resided in Ponca City, and that Phillips' characteristics resembled those of a schoolmate of some forty years previous although the identity of Phillips was not definitely established until the juror had a personal conversation with Phillips after the trial was completed. Likewise, Ruby did not remember that Mr. Phillips' law firm had represented Mrs. Ruby and himself in a probate proceeding involving the estate of Ruby's foster mother until after the trail had been in progress for some time.

The affidavit of Hahn showed his knowledge of Betty did not affect his deliberations and if it had, it would have been in plaintiff's favor while Ruby's affidavit showed that he was not influenced by what he remembered about Phillips. We are bound to consider the affidavits in their entirety and all of them together along with the applicable general rule (39 Am. Jur. 87, § 73) which was quoted in the Kerby case as follows:

" 'The refusal or denial of a motion for a new trial for alleged misconduct on the part of the jury is, as a general rule, a matter within the discretion of the judge presiding at the trial; and unless it appears that this discretion has been abused, that there has been palpable error, or that the judge has refused to review and consider the evidence by which the consideration of the motion should have been guided or controlled, his refusal to grant a new trial will not be disturbed. . . .' " (p. 496.)

We conclude the trial court was correct in overruling the motion for new trial.

One of our more recent decisions relating to misconduct of jurors is *Kaminski v. Kansas City Public Service Co.,* 175 Kan. 137, 259 P. 2d 207, wherein the jurors on *voir dire* examination not only fabricated their answers regarding their implication in actions similar to the one being tried but during the trial they made unauthorized out-of-court investigations of facts including a view of premises. A new trial was granted therein but it can readily be seen that case was distinctly different from our present case. Another recent case is *Pulkrabek v. Lampe,* 179 Kan. 204, 293 P. 2d 998, wherein after the trial court had given an instruction thereon, the jury asked for and was given a dictionary by the sheriff in order to obtain a definition of the word *proximate.* We there said:

". . . the established rule of this jurisdiction is that before a judgment will be reversed and a new trial granted because of misconduct of the jury in the jury room it must affirmatively appear that the substantial rights of the party complaining have been prejudiced thereby." (Syl. ¶ 2.)

The previously-mentioned statement of juror Knight to the effect that he had made up his mind and that a verdict should forthwith be entered for defendant successfully rebutted the contention that Ruby had talked more than the foreman during the deliberations and had thereby swayed the jury. Especially is this true when we compare the instant case with the circumstances of the Pulkrabek case. There consideration was given to the impact that a dictionary definition, from outside the record, would have on a jury of twelve laymen who were unschooled in the law and in view of the court having instructed the jury thereon, but this court concluded that no substantial right had been prejudiced thereby.

In *Johnson v. Colorado Interstate Gas Co.,* 182 Kan. 474, 322 P. 2d 781, an eminent domain proceeding, the question revolved around the *voir dire* examination of a juror wherein his answer revealed his attitude in regard to pipeline companies. The juror's conduct in the Johnson case more closely approached misconduct than in the

case at bar but there, too, we affirmed the trial court's denial of a new trial. Similarly, in *Domann v. Pence*, 183 Kan. 135, 325 P. 2d 321, where damages were sought for personal injuries resulting from a collision of automobiles at a blind intersection, we applied the same rules that we now adhere to in the case before us.

We are unable to find error in the determination of the questions involved as made by the trial court.

Judgment affirmed.