## No. 44,179

Edwin J. Diefenbach and Mildred I. Diefenbach, His Wife, and Edna Diefenbach, Landowners, *Appellants*, v. The State Highway Commission of Kansas, Condemner, *Appellee*.

(407 P. 2d 228)

Opinion filed November 6, 1965.

*E. P. Villepigue*, of Wichita, argued the cause, and *I. H. Stearns*, of Wichita, was with him on the briefs for the appellants.

*Charles C. McCarter*, of Wichita, and *David W. Craig*, of Topeka, both argued the cause and *John H. Morse*, Assistant Attorney General, was with them on the briefs for the appellee.

The opinion of the court was delivered by

Hatcher, C.: This controversy stems from an award in a condemnation proceeding.

The State Highway Commission determined that it was in the public interest to build a controlled-access highway which would

by-pass Wichita, Kansas on the west and north in such a manner as to connect State Highway 254 running east to El Dorado, Kansas with Interstate Highway 235 and avoid the necessity of the traffic passing through the city of Wichita. It was necessary to condemn certain lands for such purpose including part of appellants' land.

The appellant landowners own a farm consisting of 274.62 acres outside the city limits of Wichita which was generally described as:

"The North 42.09 acres of the East Half (E/2) of the Southwest Quarter (SW/4) of Section 23; the East Half (E/2) of the Northwest Quarter (NW/4) of Section 23; and the Northeast Quarter (NE/4) of Section 23, all in Township 26 South, Range 1 East, Sedgwick County, Kansas."

The land is bounded on the north by 53rd Street and on the east by North Oliver Street. The C. R. I. & P. Railroad runs diagonally across the land from the southwest. The new highway was to parallel the railroad right-of-way on the west.

The State Highway Commission condemned five separately described tracts from the appellants' land. A rough map appended to the opinion will sufficiently identify the tracts without including the lengthy metes and bounds descriptions. The general information contained in the condemner's petition may be summarized as follows:

Tract (*a*) contains 5.28 acres in the southwest quarter of Section 23 taken for the construction of part of the controlled access highway.

Tract (*b*) contains 20.88 acres in the east half of the northwest quarter and the northeast quarter of Section 23 taken for the new controlled-access highway and also land taken in a triangular shape west of the railroad right-of-way abutting 53rd Street for the construction of an overpass on 53rd Street. The interest taken is described as "An Easement for Right-of-Way for Controlled-Access Highway Purposes."

Tract (*c*) contains .30 acres taken from the east half of the northwest quarter of Section 23 for a channel change and for removal of borrow material.

Tract (*d*) contains 4.94 acres in the northeast quarter of Section 23 abutting on existing 53rd Street east of the railroad right-of-way. The interest taken is described as "An Easement for Right-of-Way for Controlled-Access Highway Purposes." However, all of this land was taken for the construction of the east half of the overpass on 53rd Street.

Tract (*e*) is the 20.07 acres taken to remove borrow material in the east half of the west half of Section 23.

The court appointed appraisers valued the 51.47 acres of land taken at $47,456.00 and estimated damages to the remainder at $6,032.00, or a total of $53,488.00. Both the landowners and the condemner appealed from the appraisers' award. Following the trial of the matter on appeal the jury rendered a verdict in favor of the landowners for $49,000.00. The fair and reasonable value of the land taken was found to be $39,000.00 leaving $10,000.00 as damages to the remainder.

The landowners have appealed to this court from the verdict of the jury and the judgment rendered thereon.

The appellants contend generally that the trial court erred in overruling the motion to set aside the verdict and for a new trial. They make a specific charge that the verdict was grossly inadequate, contrary to the evidence and not supported by any competent evidence. We cannot agree with this contention. The amount reached by the jury in its verdict was well within the range of the testimony of the expert witnesses. The testimony of the witnesses as to the total award due the landowners ranged from $46,705.00 to $75,-115.50. The jury's general verdict of $49,000.00 was well within that range.

It is a universal rule of this court that if a verdict is supported by substantial evidence it will not be disturbed on appeal. (*McCarthy v. Tetyak*, 184 Kan. 126, 334 P. 2d 379; *Townsend, Administrator v. Jones*, 183 Kan. 543, 555, 331 P. 2d 890; *Purvis v. Brenner*, 189 Kan. 369, 374, 369 P. 2d 253.) Neither will a verdict for actual damages be disturbed merely because this court cannot definitely ascertain the precise method by which the jury arrived at the exact amount of its verdict when such an amount is reasonably within the range of the evidence. (*Will v. Hughes*, 172 Kan. 45, 238 P. 2d 478; *Taylor v. State Highway Commission*, 182 Kan. 397, 320 P. 2d 832; *Johnson v. Colorado Interstate Gas Co.*, 182 Kan. 474, 479, 322 P. 2d 781.)

If the evidence of the expert witnesses was competent it was ample to support the verdict of the jury. This brings us to the more serious question: Was incompetent testimony erroneously admitted as to damages to the remaining land or the value of the land taken?

The appellants state in their brief:

"In the case at bar the Commission tried the case on the erroneous theory that they were not taking the right of access to 53rd Street, and undoubtedly instructed their witness . . . to base his testimony on such theory. . . ."

We do not so understand the commission's position. The commission does not contend that there was no loss of actual right of ingress and egress to 53rd Street, neither does it contend that the landowners were not damaged because there was no taking of the legal access. The commission simply contends that its witness had the right to express his opinion to the effect that the access taken caused no damage to the remainder of the land. The witness testified:

"Q. Well, you mean you didn't give any damage, then you didn't consider that they were damaged by reason of that loss of access, did you?

"A. That is what I stated, that in my opinion they were not damaged.

"Q. Did you consider a loss of access a property right of an abutting owner or not, . . .?

"A. There is no legal loss of access.

"Q. It isn't a question of legal loss of access. The question is whether there was a loss of access. I'm asking, did you consider the loss of access from an existing road was or was not a property right of the Diefenbachs before their land on the north side was taken?

"A. It's a property right, but in my opinion it had no value."

It is quite clear that what the witness was attempting to say on cross-examination was that there was no compensable damages for loss of access. The right of access was a property right but in the witness' opinion it had no value.

The appellants next complain of the witness' valuation of the twenty and a fraction acres condemned for a borrow pit. The witness valued the acreage at 75% of the fee value of $750.00 per acre because only an easement was taken and the owners would some day get back the acreage taken.

The valuation by the witness of the land taken for a borrow pit was based on an erroneous theory. The commission took a perpetual easement in the acreage. The interest taken by the commission was the same as that taken for the highway right-of-way.

The condemner cannot now contend before the jury that it intends only a limited use where the right taken is perpetual. In *Sutton v. Frazier,* 183 Kan. 33, 325 P. 2d 338, we held:

"In an eminent domain proceeding the report of the appraisers must show what is taken, and what the landowners part with. Nothing is taken by implication or intendment, and the landowners may rely implicitly on the report filed which becomes the evidence and the only evidence of the commissioners' doings." (Syl. 8.)

The landowners are entitled to compensation based on the full use which the condemner has the right to exercise over the ease-

ment condemned as described in the condemner's petition and considered by the appraisers. (*Roberts v. Upper Verdigris Watershed,* 193 Kan. 151, 392 P. 2d 914.)

However, we do not believe that the appellants should be permitted to raise the question for the first time on appeal.

The witness stated that he valued the land at $1,000.00 per acre. He then testified further:

"A. There were 20.07 acres of borrow taken. And I valued the borrow easement taken at 75% of the fee or $750.00 per acre. The fee title holder has rights remaining in the borrow pit.

"MR. VILLEPIGUE: I object to that, Your Honor.

"THE COURT: Sustained.

"MR. VILLEPIGUE: I move that his testimony be stricken on the grounds that it is not—

"THE COURT: I'll strike that portion of the testimony.

"MR. VILLEPIGUE: That is what I mean."

It definitely appears that at the request of appellant the court struck that part of the testimony which determined how the value was determined but the court was not requested and did not strike the testimony as to the value of the easement taken. However, after the testimony was stricken the appellant continued the same line of questioning. We quote:

"Q. What I mean is, . . . I want to know whether or not in appraising the value of the 223.15 acres after the taking you considered that the owners would get back the some [same] 20.88 acres in that borrow pit on the west side of their property?

"A. Well, again, I'm not attempting to practice law, Mr. Villepigue. The instructions that we are given on a borrow easement is that the fee title is not taken.

"Q. Yes.

"A. That is what I am attempting to say.

"Q. And you are saying that they will get it back? Well?

"A. And it was my understanding that all that was taken from them was the right to remove the dirt, the land for fill.

"Q. Now, assuming that under the law when a highway or other State agency or corporation condemns land and they take the land for a borrow pit, that the law is that they take all of the title to that property, would that make any difference as to the value in your opinion of the land, of 223.15 acres, after the taking?

"A. If I was told that under the law they were taking—

"Q. I asked you to assume that.

"A. That they were taking all of the fee?

"Q. Yes.

"A. Then I could value the entire fee ownership."

There was no objection following this cross-examination.

We can only assume that appellant wished to let the witness' testimony stand as to the total value of the land taken after the witness' method of arriving at the value of the land taken had been discredited.

The appellants did not ask to have the testimony of the witness as to value stricken. Neither did they ask the court to instruct the jury to disregard the testimony or to instruct the jury specifically on the proper measure of valuing a perpetual easement for a borrow pit. Neither was the specific question raised on the motion for new trial.

We are not informed as to appellants' strategy but able counsel must have been satisfied with the testimony as it went to the jury.

An appeal from the appraisers' award is to be docketed and tried as any other civil action. (K. S. A. 26-508.) The general rules applicable to civil actions therefore apply.

An objection to evidence cannot be made for the first time on appeal. In *Thornton v. Bench,* 188 Kan. 89, 360 P. 2d 1065, we state at page 94:

"As it noted, plaintiff's objection was solely on the ground of irrelevancy. He here contends that the trial court erred in overruling the objection on the ground that the exhibit was hearsay. What was said in *Gaynes v. Wallingford,* 185 Kan. 655, 347 P. 2d 458, fully answers the contention:

"'. . . The short answer to the contention is that the appellant made no objection to the testimony as not being the best evidence, or that it was hearsay as to the appellant, and made no motion to strike the evidence for those reasons. Under such circumstances, the objection comes too late when it is first made on appellate review (*Long v. Lozier-Broderick & Gordon,* 158 Kan. 400, 147 P. 2d 705.' (1. c. 661.)" (See, also, *Folkerts v. Kansas Power & Light Co.,* 190 Kan. 159, 372 P. 2d 997.)

We have carefully reviewed other questions presented by appellant which are closely related to those determined herein and find no trial errors which would require the granting of a new trial.

The judgment is affirmed.

APPROVED BY THE COURT.